J-S75028-16

2016 PA Super 311

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANDRE RAYMELLE WATLEY | |
| Appellant | No. 845 EDA 2016 |

Appeal from the PCRA Order January 27, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001701-2009

BEFORE: BOWES, J., MOULTON, J., and MUSMANNO, J.

OPINION BY MOULTON, J.:                    **FILED DECEMBER 29, 2016**

Andre Raymelle Watley appeals from the January 27, 2016 order of the Court of Common Pleas of Northampton County dismissing, in part, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

This Court previously summarized the factual background of this matter as follows:

> State police effectuated a traffic stop of [Watley] and his passenger, Randy Hayward, after observing them traveling at ninety-five miles per hour in a forty-five mile per hour zone. The stop occurred at approximately 1:45 a.m. on February 14, 2009, on State Route 22 in Northampton County, Pennsylvania. After pulling over the vehicle, Trooper Michael Acevedo and Trooper Lucas Lohrman approached. Trooper Lohrman walked to the passenger's side of the car while Trooper Acevedo went to the driver's side, where [Watley] was seated. When asked why he was traveling at such a high rate of speed [Watley] indicated that he was going to Easton Hospital. However,

[Watley] had passed two exits leading to the hospital. [Watley] turned over to police a Pennsylvania identification card with the name "Chonce Acey." Hayward informed police that he was Jermaine Jones, and his birth date was October 4, 1982, but he was unable to provide his social security number.

The troopers ran the information and learned that Jermaine Jones was an alias for Hayward, who had an outstanding warrant for his arrest in New Jersey. Trooper Lohrman removed [Watley] from the car and took the keys to the vehicle before allowing [Watley] to re-enter it. The troopers also asked Hayward to exit the vehicle. When Hayward stepped from the vehicle, police noticed that the floor mat was raised into a high bump and an object appeared to be underneath it. While placing Hayward under arrest, Trooper Acevedo lifted the floor mat and discovered a loaded .22 caliber handgun. Trooper Acevedo promptly alerted his partner, drew his own weapon, and ordered [Watley] to step from the car and show his hands. Rather than comply, [Watley] who was on his cellular phone, fled the scene by running across the road and its median before crossing the opposing lanes of travel and into a wooded area. Trooper Acevedo gave chase for approximately fifteen minutes, but was unable to locate [Watley].

Before police ordered the towing of the vehicle, Hayward requested a jacket that was in the backseat. Police searched the coat for weapons before turning it over to Hayward and discovered two receipts from Western Union containing [Watley's] name. Police also obtained a search warrant for the car and discovered a .25 caliber pistol, a .25 caliber magazine, a box of .22−caliber ammunition, a container with a small amount of marijuana, and thirty-four Ecstasy pills. These items were located in the passenger side glove compartment.

Hayward provided police with a written statement, as follows:

> On the date of February 13th I was picked up by "TEF" whose real name is Andre Watley around 6'o[']clock in the evening he was driving a [I]mpala (silver) which he told me

was rented for him by a female friend by the name of Erica[.] [W]e proceeded to drive thru Allentown while he made his drops and transactions[.] [A]round 10 or 11 I got dropped off at Philly's sport[s] bar on Hamilton for a few while he had to go get something. He picked me up around 11:30 or 12 and told me about a party going on in Easton at Larry Holmes Ringside Bar and Grille so we headed out that way about 1:15 or so before we made it to Ringside we were pulled over on 22 East. When the officers initially turned the lights over he stated let's keep going we can outrun them and I stated "no" because we were only speeding and that's when Andre Watley told me there's a slammer under the seat which means "gun" and I said so it's not min[e] and he said it isn't mine either by then the officers were at my window asked for License reg. insurance and ID[.] I didn't have mine and gave them my alias Jermaine Jones which came back as my real name Randy Hayward [.] I was then taken into custody and the gun was found under the seat and Andre took off running.

Commonwealth's Exhibit 6, Hayward Statement.

Prior to [Watley's] trial, Hayward also pled guilty to conspiracy related to the firearms possession and admitted that he was in a vehicle driven by [Watley] that contained two firearms and that he was not licensed to carry such weapons. This information was presented to the jury. When he testified at [Watley's] trial, however, Hayward denied knowing [Watley] or having been with [Watley] on the morning of the stop. In addition, he denied any knowledge of Ecstasy being in the car or that police provided him with his *Miranda* rights, and he did not remember writing the drops and transactions statement. That statement, which was adopted by Hayward, was introduced as substantive evidence.

**Commonwealth v. Watley**, 81 A.3d 108, 111–13 (Pa.Super. 2013)

(*en banc*) (footnote omitted).

- 3 -

Following a jury trial, Watley was convicted of two counts of firearms not to be carried without a license, one count of possession with intent to deliver ("PWID") ecstasy, one count of criminal conspiracy to commit PWID, one count of possession of ecstasy, one count of possession of a small amount of marijuana, one count of false identification to law enforcement,[1] and two summary offenses. The court imposed consecutive sentences of 42-84 months on the firearms charges, 60-120 months on the PWID charge,[2] 4-12 months on the false identification charge, and a consecutive sentence of 15-30 days on the marijuana charge.

Subsequently, as the trial court explained:

> [Watley] filed a direct appeal to the Superior Court on May 27, 2011, following the reinstatement of his appellate rights *nunc pro tunc*. A panel of the Superior Court reversed [Watley's] PWID and conspiracy convictions. The Commonwealth sought reargument, which was granted. Thereafter, [Watley's] sentence was affirmed by the Superior Court. *Commonwealth v. Watley*, 81 A.3d 108 (Pa. Super. 2013). He filed a petition for allowance of appeal to the Supreme Court, which was denied on July 8, 2014. On June 2, 2015, [Watley] filed a timely petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, which was assigned to the Honorable Paula A. Roscioli as a result of Judge Smith's appointment to the Federal bench in 2014. A hearing on the matter was held on October 9, 2015, and the record

---

[1] 18 Pa.C.S. § 6106(a)(1); 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 903(a)(1); 35 P.S. § 780-113(a)(16); 35 P.S. § 780-113(a)(31); and 18 Pa.C.S. § 4914(a), respectively.

[2] The court imposed a mandatory minimum sentence of five years' incarceration on the PWID charge pursuant to 42 Pa.C.S. § 9712.1.

left open for additional testimony. The parties then reconvened on October 30, 2015, at which time counsel for [Watley] made an oral discovery motion. That motion was denied in a written opinion by the undersigned on November 12, 2015.

Opinion, 1/27/16, at 1-2 ("PCRA Op.").

On January 27, 2016, the PCRA court vacated Watley's sentence and ordered re-sentencing to be held on March 11, 2016.[3] The PCRA court explained that, pursuant to **Alleyne v. United States**, 133 S.Ct. 2151 (2013), and **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014), Watley's mandatory minimum sentence was unconstitutional. PCRA Op. at 7. The PCRA court further explained that Watley's sentence had to be vacated in its entirety because the entire sentencing scheme was impacted. **Id.** The PCRA court denied Watley's petition in all other aspects. Watley filed a timely notice of appeal on February 19, 2016.[4]

Watley raises the following issues on appeal:

_____

[3] The court's order stated that re-sentencing was contingent upon lack of a timely appeal in this matter. Order of Court, 1/27/16. We find that this appeal is now properly before us. **See Commonwealth v. Gaines**, 127 A.3d 15, 17-18 (Pa.Super. 2015) (finding that an order granting in part and denying in part all issues raised in Appellant's PCRA petition was a final order for purposes of appeal).

[4] Watley originally filed a *pro se* notice of appeal on February 16, 2016. He then filed a counseled notice of appeal on February 19, 2016. Watley's *pro se* appeal, docketed with this Court at No. 835 EDA 2015, was discontinued, and this Court sent notice of the discontinuance on April 5, 2016.

A. Attorney Sletvold was ineffective for failing to object (or failing to appeal, if the trial record is construed as the Trial Court ruling that such statements were admissible) to the admission of the prior statement and prior guilty plea colloquy of Randy Hayward, given that such prior statements were not inconsistent with Haywards trial testimony.

B. Attorney Sletvold was ineffective for failing to file a motion to suppress evidence found during an unconstitutional search and seizure of the vehicle stopped by the state police.

C. Attorney Sletvold was ineffective for failing to consult with [Watley] prior to trial, failing to call alibi witnesses, and failing to advise [Watley] that it was in his interest to testify at trial.

D. The PCRA Court erred in failing to grant [Watley]'s request that the identification card of Chonce Acey be sent to the Pennsylvania State Police for fingerprint analysis.

Watley's Br. at 4-5 (suggested answers omitted).

Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011). This Court "will not disturb findings that are supported by the record." *Id.*

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

We first address Watley's claims for ineffective assistance of counsel. When analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. *Commonwealth v. Spotz*, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he defendant bears the burden of proving ineffectiveness."

- 6 -

*Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." *Id.* To establish the second ineffectiveness prong, the petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Spotz*, 18 A.3d at 260 (quoting *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006)). To establish the third prong, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Id.*

## A. Prior Inconsistent Statements

First, Watley claims that his trial counsel was ineffective for failing to object to (or failing to appeal) the admission of Randy Hayward's prior statement to the police and prior guilty plea colloquy. The prosecution called Hayward as a witness at trial. When Hayward testified that he did not know Watley, the prosecutor first used both Hayward's earlier, signed statement to the police and his sworn guilty plea colloquy in an effort to refresh Hayward's recollection. *See* N.T., 7/13/10, at 126-41. When that

effort proved largely unsuccessful, the prosecutor then used the statements both to impeach Hayward and as substantive evidence of Watley's guilt. *See id.* at 183.[5] Watley argues that his trial counsel should have objected to the admission of those prior statements on the ground that they were not inconsistent with his trial testimony and therefore inadmissible hearsay. Watley's Br. at 25.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Commonwealth v. McCrae*, 832 A.2d 1026, 1034 (Pa. 2003); *see* Pa.R.E. 801(c). Hearsay is not admissible "except as provided by the Pennsylvania Rules of Evidence, [by other rules prescribed by the Supreme Court of Pennsylvania], or by statute." *McCrae*, 832 A.2d at 1034; *see* Pa.R.E. 802. "It is long settled that a prior inconsistent statement may be used to impeach a witness." *Commonwealth v. Brown*, 448 A.2d 1097, 1102 (Pa.Super. 1982) (quoting *Commonwealth v. Hensley*, 441 A.2d 431, 435 (Pa.Super. 1982)). "Further, a prior inconsistent statement may be offered not only to impeach a witness, but also as substantive evidence if it meets additional requirements of reliability." *Commonwealth v. Carmody*, 799 A.2d 143, 148 (Pa.Super. 2002). "The test is a two-part inquiry: 1) whether the statement is given

---

[5] The transcript of Hayward's guilty plea hearing was admitted into evidence without objection on the second day of trial. N.T., 7/14/10, at 125.

under reliable circumstances; and 2) whether the declarant is available for cross-examination." *Id.* "With respect to the second prong, cross-examination, the inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test." *Id.* at 148. At the time of Watley's trial, Pennsylvania Rule of Evidence 803.1 read as follows:

> The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement:
>
> > (1) Inconsistent Statement of Witness. A statement by declarant that is inconsistent with the declarant's testimony and (a) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) is a writing signed and adopted by the declarant, or (c) is a verbatim contemporaneous recording of an oral statement.[6]

In his brief, Watley contends:

> As a matter of law, Hayward's trial testimony, consisting of "I don't know" and "I don't recall" in response to the Commonwealth's questions, was *not inconsistent* with his February 20, 2009 statement to the police. As such, neither the statement to the police nor his guilty plea colloquy were admissible as substantive evidence.

---

[6] The text of Pa.R.E. 803.1 was amended in 2013, after Watley's trial. The amendment did not change the rule substantively. *See* Pa.R.E. Explanatory Comments (noting that 2013 amendments to Pennsylvania Rules of Evidence left substantive content unchanged).

- 9 -

Watley's Br. at 25 (emphasis in original). In support of this argument, Watley relies chiefly on the following statement in ***Commonwealth v. Knudsen***, 278 A.2d 881, 883 (Pa. 1971):

> [O]ur courts have been loathe to allow cross-examination for purposes of impeachment by use of prior statements when a witness states that he does not know or that he cannot remember. This is so for the reason that such an in-court declaration does not harm the calling party nor aid the opposing party.

We disagree with Watley's contention that Hayward's trial testimony was not inconsistent with his prior written statement and guilty plea colloquy. There is an important distinction between a mere failure of recollection, which might not be inconsistent with an earlier statement, ***see Commonwealth v. Moore***, 340 A.2d 447, 449 (Pa. 1975) ("[W]here the witness has made no assertions which stand in contradiction to statements the witness has made earlier, but merely claims he or she does not know or cannot remember, the prior statements should not be introduced."), and a claimed failure of recollection accompanied by affirmative assertions inconsistent with the earlier statement. While at times during his trial testimony, Hayward professed a failure of recollection, ***see, e.g.,*** N.T., 7/13/10, at 126, 134, at other times his recollection was quite strong. Most significantly, he repeatedly asserted both that he did not know Watley and that Watley was not in the car with him at the time of the stop. The following passages from Hayward's trial testimony are illustrative:

- 10 -

Q. Exactly. He picked you up again around 11:30 or 12 and told you about a party going on in Easton at the Larry Holmes Ringside.

So you headed that way about 1:15 or so. You're leaving Allentown about 1:15 with Watley in the car, with Watley driving; right? Right? Yes? Correct?

A. I don't know who Watley is.

Q. You don't know who he is?

A. No.

Q. You're writing all about him in the statement, but you're telling these people you don't know who he is?

A. No, I don't.

Q. You made it to the Ringside. You were headed to the Ringside; right? Right? Because he told you about the party's there; is that right? Is that a yes?

A. You keep saying he told me about the party, but I'm telling you I don't know who he is.

Q. Notwithstanding the fact that your entire statement referring to Andre Watley, Andre Watley, Andre Watley, now you don't know?

A. No, sir. I don't know who he is.

N.T., 7/13/10, at 132-33.

Q. And with the State Police standing at your window, you knew you got guns in the car?

A. Yes.

Q. And you knew you got Watley sitting next to you or had he run yet?

A. I don't know who Watley is.

Q. Well, let me help you. Look over there.

A. I never seen him before in my life.

Q. Never saw him before in your whole life?

A. No, sir.

Q. Andre Watley, all the way through the statement; right?

A. Yes.

Q. Now you're telling me you never seen him before?

A. No, sir.

*Id.* at 136.

Q. Now, I said so it's not mine. I went through that already. But now you're telling us you did know it was there. Officers at your window asking for a license, you didn't have your license, so you gave them an alias. You gave them a fake name; right?

A. Yes.

Q. And came back as your real name Randy Hayward. You were taken into custody and then Watley ran; right?

A. I don't know who ran.

Q. Somebody ran.

A. Somebody ran.

Q. The person that throughout your interview with police you called Andre Watley; right?

A. No, sir.

Q. No, sir?

A. I said, No, sir. It wasn't Andre Watley. I'm watching him right now. It wasn't him.

*Id.* at 136-37.

Q. You told the state police, yeah, that's the guy who was driving the car. I'm wearing his coat. Remember that?

A. No. I don't remember that, sir.

Q. You don't remember that?

A. No.

- 12 -

Q. But there's no question Commonwealth's Exhibit 6 is your statement in your hand, signed by you; correct?

A. Yes.

Q. But somehow your testimony today is that it was not Andre Watley with you; is that correct?

A. Yes, sir.

Q. With your written statement and your interview with the police being in exact contradiction; right?

A. Yes.

*Id.* at 138-39.

Similarly, Hayward affirmatively denied at trial knowing several important facts, such as the meaning of the term "slammer," despite having told the police in his written statement that Watley had used the term to refer to a gun under the seat of the car.

Q. Right here, That's when Andre Watley. You see where you wrote that.

A. Yes.

Q. February 20, 2009?

A. Yes.

Q. That's when Andre Watley told me there's a slammer under the seat. Tell them what a slammer is. Tell the ladies and gentlemen of the jury what a slammer is.

A. I don't know what it is.

Q. You don't know what that is either?

A. No, sir.

Q. So when Watley told you there was a slammer under the seat, you're telling us you didn't know what that meant?

A. No, sir.

Q. But in the very next line, the very next set of words, you tell us what a slammer is, because you know what a slammer is. You know, you're with Watley. Let's read on.

I stated no because we are only speeding. And that's when Andre Watley told me there's a slammer under the seat, which means -- right in the statement -- you see that? Which means gun. That's your statement; right, sir?

A. Yes. I'm reading it.

Q. Okay. That's what it says; right?

A. Yes. That's what it says.

Q. That's your statement. I said no. Excuse me. I said so -- this is you speaking -- I said, So it's not mine. And then he, Watley, said, It isn't mine either; right? That's what you wrote?

A. Yes. That's what I wrote.

*Id.* at 134-36.

We agree with the PCRA court that Hayward's trial testimony "was plainly inconsistent with his prior sworn testimony on multiple occasions." PCRA Op. at 12. Hayward acknowledged that he wrote and signed a statement to the police on February 20, 2009. N.T., 7/13/10, at 124-25. Hayward also acknowledged his previous guilty plea colloquy. *Id.* at 139. However, contrary to both his signed written statement and his plea colloquy, in his trial testimony Hayward expressly denied that Watley was in the car with him on the day in question, that Watley had told him about the gun under the seat of the car, and that Watley was the person who had run from the car to elude the police. Indeed, Hayward himself, in response to a

- 14 -

question from the prosecutor, conceded that his trial testimony was in "exact contradiction" to his statement to the police. *Id.* at 138-39. In short, contrary to Watley's claim on appeal, Hayward's trial testimony was plainly and materially inconsistent with both his signed prior statement to the police and his sworn plea colloquy.

Watley's reliance on our Supreme Court's 1971 decision in *Knudsen* is misplaced. In *Knudsen*, a witness testified on direct examination that he did not know whether the defendant had cocked his gun before heading in the direction of his victim. 278 A.2d at 882. Conversely, the witness had earlier told the police that the defendant had cocked the gun. *Id.* Our Supreme Court held that "when a witness claims he does not know or cannot remember, the prior statements should not be introduced because of the danger that the prior statements will be considered as substantive evidence by the jury." *Id*. at 883. While *Knudsen* was decided before Pennsylvania adopted the Rules of Evidence in 1998, its central premise remains good law – in some circumstances a mere failure of recollection at trial should not be understood as sufficiently inconsistent with an earlier statement to warrant the admission of the earlier statement. Nevertheless, *Knudsen* is readily distinguishable. As discussed above, Hayward's trial testimony, far from a simple failure of recollection, directly contradicted his earlier statements. That Hayward also responded "I don't recall" and "I don't remember," *see, e.g.,* N.T., 7/13/10, at 125, 128, 131, hardly brings this case within

- 15 -

*Knudsen*'s ambit.  In sum, Hayward's statement to the police and his guilty plea colloquy were both inconsistent with his trial testimony.  Because Hayward signed and adopted the prior statement, and the guilty plea colloquy was administered under oath at a formal legal proceeding, both were properly admitted as substantive evidence at trial.  *See Lively*, 610 A.2d at 11.  Because Watley's underlying substantive claim lacks merit, he cannot satisfy the first prong of the ineffectiveness test.  Accordingly, we need not reach the second and third prongs of the test.

### B. <u>Search of Vehicle</u>

Next, Watley claims that trial counsel was ineffective for failing to file a motion to suppress evidence found during an unconstitutional search and seizure of the vehicle.  We disagree.

This Court has previously found that "[t]he failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel."  *Commonwealth v. Metzger*, 441 A.2d 1225, 1228 (Pa.Super. 1981); *see also Commonwealth v. Ransome*, 402 A.2d 1379, 1381 (Pa. 1979).  "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move."  *Metzger*, 441 A.2d at 1228.  "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the

verdict would have been more favorable." ***Commonwealth v. Melson***, 556 A.2d 836, 839 (Pa.Super. 1989).

Watley contends that his trial counsel should have filed a pretrial motion seeking suppression of all evidence – including firearms, drugs, and receipts – recovered from the vehicle stopped by police on February 14, 2009. Watley's Br. at 32. In particular, he argues that the officers' search of the vehicle, resulting in discovery of a gun under the passenger floor mat, was unconstitutional. ***Id.*** at 36. After the vehicle was impounded, police conducted a second search pursuant to a warrant. PCRA Op. at 14. Watley argues that the evidence recovered from this search should have been suppressed as fruit of the poisonous tree. Watley's Br. at 37.

We find that Watley's trial counsel was not ineffective because a motion to suppress the evidence would have been without merit. Watley's claim turns on whether it was constitutionally proper for Trooper Acevedo to have lifted the floor mat on the passenger's side of the car. We agree with the PCRA court that "[Trooper] Acevedo's action in lifting the floor mat" was a constitutionally permissible protective search for weapons. PCRA Op. at 14. The United States Supreme Court, in addressing when a police officer may conduct a protective weapons search of the interior compartment of a car, has held that:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer

possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

*Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).[7] Our Supreme Court has stated that a police officer may conduct a protective weapons sweep of a vehicle where the officer has sufficient facts at his disposal such that a "reasonably prudent man would have believed his safety was compromised." *Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994). Accordingly, "[w]e look at the totality of the circumstances facing an officer when we examine whether that officer came to a reasonable suspicion to search for a weapon." *Commonwealth v. Tuggles*, 58 A.3d 840, 843 (Pa.Super. 2012).

The totality of the circumstances in this case gave the officers reasonable suspicion to support a protective search of the car for weapons. As Trooper Acevedo testified, upon first approaching the car and looking inside, he observed that Hayward, who was sitting in the passenger seat, had his knees together and was suspiciously covering up the area underneath his knees. N.T., 7/13/10, at 37, 103-04. After running the information Hayward provided through the computer, the officers discovered

---

[7] In *Commonwealth v. Morris*, 644 A.2d 721 (Pa. 1994), "our Supreme Court concluded that the *Long* standard comported with the Pennsylvania Constitution." *Commonwealth v. Tuggles*, 58 A.3d 840, 843 (Pa.Super. 2012).

that there was an outstanding warrant for Hayward's arrest and decided to take him into custody. *Id.* at 206. First, the officers told Watley to exit the car, took the keys out of the ignition, and permitted Watley to re-enter the car. *Id.* at 37, 207. They then removed Hayward from the car to take him into custody. *Id.* At this time, Trooper Acevedo "observed that the floor mat was bunched up really high and that something was there. . . . [u]nderneath the floor mat." *Id.* at 38.

Trooper Acevedo had reasonable suspicion to believe a firearm was under the floor mat in an area that Hayward, who had an outstanding arrest warrant, had earlier appeared to be covering up. Further, he had reasonable suspicion to fear for his safety, as Watley was still in the vehicle where he could easily access the object underneath the passenger's side floor mat.[8] *See Tuggles*, 58 A.3d at 844 (finding that police were permitted to ensure that suspect would not be able to gain access to a weapon in his vehicle upon return to his car after the close of investigative detention).

Watley observes that neither of the troopers testified that they feared for their safety before looking under the floor mat, and that the officers did not search Watley prior to letting him back into the car. Watley's Br. at 36. The relevant inquiry, however, is not the officers' subjective beliefs at any

_____

[8] Trooper Acevedo testified that when he discovered the gun under the floor mat, "[t]he gun was within arm's reach of the driver at that point." N.T., 7/13/10, at 109.

given time but the objective reasonableness of the search under the totality of the circumstances. *Tuggles*, 58 A.3d at 843. The officers' discovery of the bulge in the floor mat while Watley was in the car fundamentally changed the totality of the circumstances.[9] As stated above, Trooper Acevedo had yet to observe the floor mat when Watley was allowed re-enter the car. Furthermore, although Trooper Acevedo had seen Hayward covering up an area of the car, he had no further reason to believe that Hayward might have been actively concealing a weapon, until he saw the bulge.[10]

Here, the officers acted on a reasonably prudent belief that their safety was compromised once they saw the bulge in the floor mat in an area that an unsecured person in the car could readily access. Accordingly, because the claim that the evidence should have been suppressed lacks merit, we need not reach the second and third prongs of the ineffectiveness test.

_____

[9] Although the occupants of the car complied the officers' instructions, at least up to the time Watley fled, "cooperation with police does not erase an otherwise valid belief that a defendant may have access to a gun." *Tuggles*, 58 A.3d at 845.

[10] This Court has previously held that "[w]here a person performs an activity that is indicative of an attempt to secrete a weapon, that movement, regardless of whether it is singular, or multiple, can support a belief that the person has a gun." *Tuggles*, 58 A.3d at 844. Although the record does not suggest that the troopers immediately feared for their safety when Trooper Acevedo first observed Hayward concealing an area of the car, this act of concealment coupled with the actual discovery of the bulge in the floor mat supported the officers' subsequent belief that there was a gun.

### C. **Investigation and Trial Preparation**

Watley also claims that trial counsel was ineffective for failing to conduct a proper investigation of the case, including failing to spend sufficient time consulting with Watley prior to trial, resulting in a failure to advise Watley to testify and a failure to call critical alibi witnesses on Watley's behalf. Watley's Br. at 41. This claim lacks merit.

"[C]ounsel is not deemed ineffective *per se* merely because of the short amount of time he has met with his client." ***Commonwealth v. Porter***, 728 A.2d 890, 896 (Pa. 1999). "[T]he time actually spent by counsel with the accused discussing his case is not necessarily related to, and affords no basis for inferring, the extent of total trial preparation." ***Commonwealth v. Owens***, 312 A.2d 378, 381 (Pa. 1973). Rather, "to establish [ineffectiveness of counsel] Appellant must establish that counsel inexcusably failed to raise issues which, had they been raised, would have afforded Appellant relief." ***Porter***, 728 A.2d at 896.

Watley alleges that he interacted with counsel only once before trial, "during which Attorney Sletvold simply presented him with a Rule 600 waiver form and asked him to sign it." Watley's Br. at 14. According to Watley, "[a]t that time, Attorney Sletvold did not engage in any detailed discussion of the case with [him]." ***Id.*** In contrast, Attorney Sletvold testified at the PCRA hearing that he met with Watley on a number of occasions prior to trial:

Q: In your file in this case, would it be your typical practice to mark down when you meet with a client to discuss his case?

A: Sometimes it is. Not usually, because with Court-appointed cases, I'm not paid or I don't bill for my time, so I try to meet with clients when I'm able to. And certainly for a serious case like this, I tried to meet with him as much as I thought was necessary to be prepared for the trial.

. . .

Q: And I'm sorry to keep badgering you about this, but beyond testifying that you met with him more than once, can you narrow it down to any extent?

A. I would have met with him to discuss what he wanted to do with the case. I would have met with him to discuss the allegations in discovering the case and I would have met with him prior to trial, certainly when it got much closer to trial more frequently, just to make sure that he understood what was going on, what the procedure was and what evidence we would be either presenting or fighting as the case proceeded.

N.T., 10/9/15, at 6-8. The PCRA court found Watley's testimony not credible and Attorney Sletvold's testimony credible. We are bound by the PCRA court's credibility determinations. *Commonwealth v. Abu Jamal*, 720 A.2d 79, 93 (Pa. 1998). Therefore, we find the PCRA court did not err in concluding that Attorney Sletvold did not fail to consult with Watley.

Further, the PCRA court did not err in concluding that counsel was not ineffective for failing to call alibi witnesses. The PCRA court found Watley's aunt, Karen Burton, not credible when testifying that she had communicated Watley's alibi to Attorney Sletvold. PCRA Op. at 18. While Burton testified that she spoke to Attorney Sletvold over the phone on two occasions before

trial, she could not state when these conversations occurred.[11] She further testified that, "despite believing that she had an alibi for [Watley], she did not contact the authorities with this information." *Id*. The PCRA court found Attorney Sletvold credible when he testified that just before trial, he was approached by females whose identities he could not recall, and was uncomfortable during his conversations with them, because it appeared the women intended to perjure themselves. *Id.* at 19-20. Further, the PCRA court found that Attorney Sletvold credibly testified that Watley's aunt and uncle did not contact him prior to trial concerning an alibi, and that Watley never told Attorney Sletvold that he was at his aunt and uncle's house during the time period in question. *Id.* at 20. Accordingly, given the PCRA court's fully supported conclusion that counsel had not been made aware of any truthful alibi witnesses prior to trial, he cannot be found ineffective. *Id.*

We also conclude the PCRA court did not err in finding that Attorney Sletvold was not ineffective for failing to advise Watley to testify.[12] The PCRA court found that Watley's testimony – that Attorney Sletvold did not

---

[11] Burton testified that she spoke to Attorney Sletvold "way prior to a week before the trial" but was unable to provide any more specific estimate when asked. N.T., 10/8/15, at 82.

[12] Watley asserts that he would have testified as to how Chonce Acey came into possession of the Western Union receipts bearing Watley's name, as well as Watley's whereabouts at the time of the arrest, and that Attorney Sletvold would have learned this information had he consulted with Watley prior to trial. Watley's Br. 41-43.

speak to him about the decision to testify prior to trial – was not credible. PCRA Op. at 21. Rather, the PCRA court found that Attorney Sletvold credibly testified that, while he could not recall a specific conservation with Watley, he would have discussed the decision to testify with Watley prior to trial, and would not have presented him with this choice at the last minute. *Id.* Moreover, Attorney Sletvold's testimony is supported by Watley's colloquy at trial, wherein Watley stated that it was **his** decision not to testify, and that Attorney Sletvold told him that "It's ultimately my decision of taking the stand or not." *Id.*; N.T., 7/14/10, at 95. Finally, Watley also testified at the PCRA hearing that it was his choice not to testify at trial. N.T., 10/9/15, at 108.

## II. <u>REQUEST FOR FINGERPRINT ANALYSIS</u>

Finally, Watley seeks reversal of the PCRA court's November 12, 2015 order denying his motion for fingerprint analysis of an identification ("ID") card bearing the name "Chonce Acey," given to the police by the driver of the car and admitted by the Commonwealth as evidence at trial. As both parties acknowledge, "no discovery shall be permitted at any stage of [PCRA] proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). Neither the PCRA nor the Pennsylvania Rules of Criminal Procedure define the term "exceptional circumstances." ***Commonwealth v. Frey***, 41 A.3d 605, 611 (Pa.Super. 2012). This Court, however, has held that "the trial court, in its discretion"

determines whether a case is exceptional and warrants discovery. ***Id.*** Thus, "[w]e will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion." ***Id.***

Watley argues that fingerprint testing is appropriate for a number of reasons. In part, Watley claims that "the presence of his fingerprints on the card would be highly incriminating," while the absence of his fingerprints "would be highly exculpatory, given that, if Watley were the driver of the vehicle, then his fingerprints would be on the ID card." Watley's Br. at 49 (emphasis and footnote omitted).

We find that the PCRA court did not abuse its discretion in denying Watley's motion. There is nothing in the record to suggest that the PCRA court's decision was the result of bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Rather, the PCRA court found that exceptional circumstances warranting discovery did not exist. The PCRA court reasoned:

> First, we cannot conclude that the evidence alleged to exist would be exculpatory. Exculpatory evidence is that which tends to establish a criminal defendant's innocence. The fingerprint evidence that Defendant contends would be found upon testing of the ID is not of such character, and his contention that "if [he] were the driver of the vehicle, then his fingerprints *would* be on the ID card" is logically false. The alleged absence of Defendant's fingerprints on the ID card in this case could be as a result of any number of circumstances, including those consistent with his guilt in this case, e.g. the ID was wiped by Defendant, the ID was held by other persons in such a manner as to obscure Defendant's prints, the ID was held by the Defendant only along the edges, or degradation of the prints over time.

- 25 -

> See, e.g. *Commonwealth v. Wright*, 388 A.2d 1084 (Pa.Super. 1978).
>
> Furthermore, we cannot conclude that the alleged absence of fingerprints would be of any particular impeachment value. At the time of trial, both Trooper Lohrman and Trooper Acevedo positively identified Defendant as the driver of the vehicle in question. N.T. 7/13/10, pp.33, 48-50, 202. During cross-examination, trial counsel thoroughly tested this identification by calling into question Trooper Lohrman's opportunity to see the driver under the lighting conditions that were present, the amount of time he had in which to observe the driver, the position from which his observation was made, and whether a mistake can be made in distinguishing between two people of similar features. N.T. 7/13/10, pp.247 -253. The jury heard from the officers that an ID was provided to them identifying the driver as Chonce Acey. N.T. 7/13/10, p.34. The jury also heard testimony that the codefendant, Randy Hayward, told police that Chonce Acey was not the driver, while pointing to evidence which would tend to identify Defendant. N.T. 7/13/10, pp.244-245. The jury was able to consider all of this evidence in reaching its verdict, and we cannot conclude that additional evidence of an absence of Defendant's fingerprints on the ID would have had such additional impeachment value as to render the circumstances in this case exceptional so as to warrant discovery.

Order of Court, Statement of Reasons, 11/12/15, at 2-4 (emphasis in original).

Watley further argues that Attorney Sletvold was "ineffective for failing to request fingerprint analysis of the ID card prior to trial." Watley's Br. at 48. As Watley acknowledges, a PCRA petitioner alleging ineffective assistance of counsel must demonstrate resulting prejudice in order to prevail on his claim. *Id.* Watley argues that he cannot demonstrate the required prejudice "unless the ID card is actually analyzed and the analysis

confirms that Watley's fingerprints are not present." *Id.* This argument is unconvincing, and Watley offers no support from the case law for this proposition. The law is clear that there is no discovery in PCRA proceedings except upon a showing of exceptional circumstances, and the PCRA court found that exceptional circumstances warranting discovery do not exist in this matter. Accordingly, we will not order fingerprint analysis so that Watley may advance a speculative claim for ineffectiveness of counsel, and in essence, circumvent the PCRA court's determination that discovery is unwarranted.

Accordingly, because Watley is unable to demonstrate the required prejudice, his ineffectiveness claim based on Attorney Sletvold's alleged failure to request fingerprint analysis fails.

Order affirmed.[13]

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/29/2016</u>

_____

[13] In light of our disposition of this appeal, we note that Watley is due for re-sentencing on his PWID conviction pursuant to the PCRA court's January 27, 2016 order and opinion.