J-S28008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARY KATE O'DONNELL | |
| Appellant | No. 909 WDA 2016 |

Appeal from the PCRA Order June 2, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008308-2013

BEFORE:  OLSON, MOULTON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:　　　　　　　　　　**FILED MAY 23, 2017**

Appellant, Mary Kate O'Donnell, appeals from the order entered on June 2, 2016, denying relief on her petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On May 8, 2013, police responded to a residential stabbing in Stowe Township, Pennsylvania.  The victim suffered a stab wound to his abdomen.  His heart stopped twice en route to the hospital, where he spent the next 15 days recovering.  The victim underwent multiple surgeries for a broken jaw caused by a fall after the stabbing and now uses a colostomy bag.  Upon investigation, police determined that Appellant and the victim had a tumultuous domestic relationship and that Appellant was the

_____
* Retired Senior Judge assigned to the Superior Court.

perpetrator. The Commonwealth charged Appellant with criminal attempt homicide and aggravated assault.[1]

On February 18, 2014, Appellant entered into a negotiated guilty plea wherein she agreed to plead guilty to aggravated assault and, in exchange, the Commonwealth withdrew the attempted homicide charge. The trial court accepted the plea and sentenced Appellant to three to eight years of incarceration followed by three years of probation. Appellant did not appeal that decision.

On February 22, 2015, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel. On November 23, 2015, appointed counsel filed an amended PCRA petition. The PCRA court held an evidentiary hearing on April 11, 2016. On June 2, 2016, the PCRA court entered an order denying Appellant relief. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

1. Whether the [PCRA] court erred in finding that Appellant's trial counsel was not ineffective for failing to adequately explain the plea [agreement], and for failing to provide all of the evidence to [] Appellant prior to the plea of guilty.

---

[1]   18 Pa.C.S.A. §§ 2501/901 and 2702, respectively.

[2]   On June 22, 2016, Appellant filed a notice of appeal. On July 14, 2016, the PCRA court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely. On October 26, 2016, the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a).

> 2. Whether the [PCRA] court erred in finding that the guilty plea was not unlawfully induced, where the circumstances make it likely that [] Appellant pled guilty, and [] Appellant is innocent.

Appellant's Brief at 8.

Appellant's issues are interrelated, so we will examine them together. Appellant first claims that trial counsel was ineffective for failing to provide her with "records of the blood alcohol content tests done on the victim, and the medical records regarding the injuries to the victim." *Id.* at 14. She claims "those medical records contradicted the victim's [version of events] to a sufficient degree that she would have proceeded to trial if she had the records prior to the plea." *Id.* Appellant also contends that it was "her understanding that she was accepting a plea for three to six years [of incarceration,]" but that "[a]fter filling out the [written plea] colloquy, the offer was changed to three to eight years of incarceration." *Id.* at 15. Appellant maintains that because of these actions by trial counsel, her plea was involuntary, unknowing, and unintelligent. *Id.* at 15-16. She argues "she wished to maintain her innocence and proceed to trial." *Id.* at 17.

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. ***Commonwealth v. Jarosz***, 152 A.3d 344, 350 (Pa. Super. 2016) (citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Id.* Moreover,

"[w]e are bound by the PCRA court's credibility determinations."

***Commonwealth v. Watley***, 153 A.3d 1034, 1047 (Pa. Super. 2016)

(citation omitted).

> In analyzing claims of ineffective assistance of counsel,
>
>> we presume that trial counsel was effective unless the PCRA petitioner proves otherwise. In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. Where the underlying claim lacks arguable merit, counsel cannot be deemed ineffective for failing to raise it. Appellant bears the burden of proving each of these elements, and [her] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

***Commonwealth v. Jarosz***, 152 A.3d at 350 (internal quotations, citations, and original brackets omitted). "In the context of a plea, a claim of ineffectiveness may provide relief only if the alleged ineffectiveness caused an involuntary or unknowing plea." ***Commonwealth v. Orlando***, 2017 WL 772767, at *5 (Pa. Super. 2017) (citation omitted).

Here, the PCRA court determined:

> [Appellant] has failed to establish that her plea of guilty was unlawfully induced by the ineffective assistance of counsel. At [Appellant's] evidentiary hearing, [trial counsel], Attorney Josh Roberts testified that he was reassigned to cover [Appellant's] case, and that he met with [Appellant] and spoke to her several times prior to her plea. During these meetings, Attorney Roberts testified that [Appellant] had a discovery packet from her prior attorney, and never asked for additional discovery materials. Attorney Roberts further testified that when [Appellant] was offered a negotiated plea agreement of 3 ½ years to 7 years[']

- 4 -

incarceration for aggravated assault, in exchange for the Commonwealth withdrawing the attempted homicide charge, [Appellant] requested a lower minimum sentence. Attorney Roberts was able to negotiate the same deal, for a sentence of 3 – 8 years [of imprisonment], which [Appellant] accepted. [Appellant] completed a written and oral colloquy, during which time she indicated to the [t]rial [c]ourt under oath that she was satisfied with her counsel's representation, she had adequate time to discuss the case with him, that she understood the plea agreement, and that she was pleading guilty because she was in fact guilty.

The [t]rial [c]ourt [found] the testimony of Attorney Roberts credible, and [found] that [Appellant] did not request any additional discovery, she had already received discovery from her prior counsel, and Attorney Roberts did not threaten or unlawfully induce [Appellant] to plead guilty. Additionally, [Appellant] failed to establish that her guilty plea was the result of manifest injustice. Rather, the record demonstrates that [Appellant] completed a written and oral colloquy, wherein she stated that she had not been threatened or promised anything to force her to plead guilty, and that she was pleading guilty because she was in fact guilty. The record fully supports the entry of a knowing, intelligent, and voluntary plea. [Appellant's] claim in this regard is without merit.

PCRA Court Opinion, 10/26/2016, at 7.

Upon review, we discern no abuse of discretion in denying Appellant's PCRA petition. The trial court found trial counsel's testimony credible and we will not usurp the trial court's determination. Attorney Roberts testified that "there were [] medical records that the Commonwealth had obtained documenting the victim's injuries of the incident that night." N.T., 4/11/2016, at 7. When the case was reassigned to Attorney Roberts, he was uncertain if he provided the medical records to Appellant, because she

ostensibly received them from her prior attorney during discovery. However, he testified that:

> I'm not sure if I gave her a copy of them, but I certainly went over them at the County Jail with her. [Appellant] was -- I had notes relating to the tox[icology] screen.
>
> [Appellant] had attempted -- or was trying to paint some picture that the victim in this case owed money to drug dealers for prescription pain killers, that he had some sort of opiate or Benzodiazepine problem. His tox[icology] screens came back negative for anything but alcohol.
>
> I do have notes from my jail visits with her in the file. I went over the fact that the tox[icology] screen was negative for anything other than alcohol, which there was no dispute that they were both drinking on the night of the incident.
>
> So I definitely went over the medical records with her. Whether or not I provided copies to her prior to trial I'm not sure. I do believe I provided her a copy later.
>
>        \*        \*        \*
>
> […]n grand total I probably spent five, six hours with her at the County Jail prior to the non-jury trial date that was scheduled prior to my handling of the case by [Appellant]. Several hours.

*Id.* at 8-9.

Appellant does not argue she was unaware of the content of the victim's medical records or that there were additional medical records that she did not receive. She also does not explain what information in the medical records would have altered her decision to plead guilty. Upon review, trial counsel testified that he went over the victim's medical records with Appellant, and that toxicology reports showed no use of controlled

substances. As such, Appellant has not pled and proven that the "medical records contradicted the victim's [version of events] to a sufficient degree that she would have proceeded to trial if she had the records prior to the plea" as she now claims.

Regarding the negotiated sentence, the following exchange occurred before the trial court accepted Appellant's guilty plea:

THE COURT: [Appellant], [case number] 201308308, present in court with [Attorney] Roberts. [Attorney William] Petulla is here on behalf of the Commonwealth. Is there an agreement between the parties as to the charges or sentencing, [Attorney] Petulla?

PETULLA: There is. The Commonwealth moves to withdraw count one, criminal attempt. There is a plea to count two, aggravated assault, serious bodily injury. **There is an agreement to three to eight years, probation to follow set by this Honorable Court to run consecutive to that sentence.** I should note that the defendant is not RRRI eligible. This agreement was reached after extensive consultation with the family who did not wish to remain for the plea.

THE COURT: Is that your understanding, [Attorney] Roberts?

ROBERTS: Yes, that is our understanding of the agreement.

THE COURT: **Is that your understanding, [Appellant]**?

[Appellant]: **Yes**.

THE COURT: Are you clear-headed today?

[Appellant]: Yes.

THE COURT: Have you had enough time to speak to your attorney about the amendments of the crime and

- 7 -

aggravated assault and the maximum penalty that could have been imposed and the right to have a trial?

[Appellant]: Yes, Your Honor.

THE COURT: Are you satisfied with his representation?

[Appellant]: Yes, Your Honor.

THE COURT: Other than what he has negotiated on your behalf, what you have just heard stated in open court, has anybody threatened or promised you anything to plead guilty?

[Appellant]: No.

THE COURT: I have in front of me a guilty plea colloquy that bears your signature as well as that of your attorney. Did you read and understand these questions?

[Appellant]: Yes.

THE COURT: Did you answer these questions honestly?

[Appellant]: Yes, sir.

THE COURT: Was your attorney available in the event that you had any questions about this document or any matter related to this case?

[Appellant]: Yes, Your Honor.

THE COURT: [Attorney] Roberts, based on your experience and contact with [Appellant] do you believe that she understands the elements of the crimes and the maximum penalty allowed by law and she is otherwise making a knowingly, intelligently, and voluntarily fully informed decision to plead guilty?

ROBERTS: I do, Your Honor.

N.T., 2/18/2014, at 2-4 (emphasis added).

Based on the testimony above, we summarily reject Appellant's suggestion that she was deceived into accepting a sentence that was increased unilaterally without her consent at the plea hearing. As the plea hearing transcription reveals, Appellant was clearly apprised of the negotiated sentence per the plea agreement with the Commonwealth prior to entering her guilty plea. She agreed to the term of three to eight years of imprisonment and is bound by her affirmation made under oath at the guilty plea hearing. *See Commonwealth v. Willis*, 68 A.3d 997, 1009 (Pa. Super. 2013) ("Appellant is bound by these statements, which [s]he made in open court while under oath, and [s]he may not now assert grounds for withdrawing the plea which contradict the statements."). If the negotiated agreement was not as she understood it, Appellant had an opportunity to correct it at the plea hearing. Now, however, she simply cannot assert that she did not understand the plea agreement as a reason to withdraw her plea.

For all of the foregoing reasons, there is no merit to Appellant's claims that trial counsel provided ineffective assistance in representing Appellant at her plea hearing. Because Appellant's claim that she did not enter a voluntary or knowing plea hinges solely on counsel's performance, which we deem effective, we conclude that Appellant is not entitled to relief on her claim that her guilty plea was unlawfully induced.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017