J-S02009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTWON A. STEELE | : | |
| | : | |
| Appellant | : | No. 159 MDA 2022 |

Appeal from the PCRA Order Entered December 21, 2021
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0002364-2016

BEFORE: PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED APRIL 24, 2023**

Antwon A. Steele brings this appeal from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Upon careful review, we affirm.

In addressing Steele's direct appeal, this Court summarized the facts of this case as follows:

> On April 26, 2016, reports of shots fired at the Sherman Hills housing complex in Wilkes-Barre prompted several patrol officers to respond to the area. Officer[ James] Verdekal, [along with Officers] Majikes, and Lada arrived and encountered [Steele] as he exited Building 312 of the apartment complex. [Steele] provided his name and stated that he was out on bail, and uninvolved in any criminal activity.
>
> The responding officers later reviewed surveillance footage of Sherman Hills that recorded a man, whom the officers recognized as [Steele], firing into Building 316. Using the video footage as a guide, the officers recovered a bullet casing at the location from which [Steele] fired a gun and a bullet fragment in the windowsill of Building 316, Apartment 325.

The investigating officers apprehended [Steele] based on the GPS coordinates of his ankle monitor provided by his bail agency. On August 23, 2016, the Commonwealth charged [Steele] with one count each of Persons Not to Possess Firearms, Carrying a Firearm Without a License, and Discharge of a Firearm into an Occupied Structure.

*Commonwealth v. Steele*, 425 MDA 2018, 221 A.3d 282, at *1-2 (Pa. Super. filed August 16, 2019) (unpublished memorandum).

On November 21, 2017, at the conclusion of a nonjury trial, the court convicted Steele of all three charges. The trial court imposed an aggregated judgment of sentence of ten to twenty years of incarceration on January 3, 2018.

Steele filed post-sentence motions, which the trial court denied. On August 16, 2019, this Court affirmed Steele's judgment of sentence on direct appeal. *See Steele*, 425 MDA 2018, 221 A.3d 282.

Steele filed this timely PCRA petition, *pro se*, on March 18, 2020. The PCRA court appointed counsel, who then filed an amended PCRA petition. The PCRA court held an evidentiary hearing on March 1, 2021. The PCRA court denied relief and this timely appeal followed. Steele raises three challenges to the effective assistance of trial counsel related to the suppression of evidence.

Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. *See Commonwealth v. Phillips*, 31 A.3d

317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See id*.

Each of Steele's issues present claims of ineffective assistance of counsel. Concerning ineffective assistance of counsel arguments, we presume counsel is effective, and Steele bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012). To establish a right to relief, Steele must demonstrate: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Solano*, 129 A.3d 1156, 1162-1163 (Pa. 2015).

We observe that claims of ineffective assistance of counsel are not self-proving. *See Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." *Commonwealth v. D'Amato*, 856 A.2d 806, 812 (Pa. 2004) (citation omitted). "[A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." *Commonwealth v. Bracey*, 795 A.2d 935, 940 n.4 (Pa. 2001) (citation omitted). "A failure to satisfy any prong

of the ineffectiveness test requires rejection of the claim of ineffectiveness."
***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Under the first prong of the ineffectiveness test, an appellant is not entitled to relief if his underlying legal has no merit. ***See Commonwealth v. Ousley***, 21 A.3d 1238, 1246 (Pa. Super. 2011). In short, counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***See Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Concerning the third prong, we are mindful that prejudice requires proof that there is a reasonable probability that but-for counsel's error, the outcome of the proceeding would have been different. ***See Commonwealth v. Pierce,*** 786 A.2d 203, 213 (Pa. 2001). When an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. ***See Commonwealth v. Baker***, 880 A.2d 654, 656 (Pa. Super. 2005).

Here, Steele first argues that his trial counsel was ineffective for failing to seek suppression of evidence obtained during his initial encounter with police. ***See*** Appellant's Brief at 5-6. We observe that "[t]he failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel. ... [T]he defendant must establish … there is a reasonable probability the verdict would have been more favorable."

***Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citations & quotation marks omitted).

Specifically, he contends that "counsel should have filed a pre-trial motion seeking to suppress his statements to the police." Appellant's Brief at 6. Steele claims that "he was forced to give up his identity and admit that he was on bail during this custodial interrogation." ***Id***. Therefore, to address Steele's argument, we must first assess whether he was subjected to a custodial interrogation.

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania have long required law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. ***See Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> [s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Bolton***, 831 A.2d 734, 735 (Pa. Super. 2003). As the first level of interaction between police and citizens, a mere encounter is itself a "request for information," which needs no level of suspicion.

- 5 -

*Commonwealth v. Acosta*, 815 A.2d 1078, 1082 (Pa. Super. 2003) (*en banc*).

"A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond." *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005) (citation omitted). If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. *See Commonwealth v. Boswell*, 721 A.2d 336, 340 (Pa. 1998). However, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Commonwealth v. McClease*, 750 A.2d 320, 324 (Pa. Super. 2000) (citation omitted). Our Supreme Court has confirmed that, without more, an officer's request for a person's identification does not transform a mere encounter into an investigatory detention. *See Commonwealth v. Au*, 42 A.3d 1002, 1009 (Pa. 2012).

The PCRA court addressed this claim as follows:

In the present case, Officer Verdekal responded to a report of shots fired and upon arriving at the scene he and other officers began to ask passers by what they were doing in the area or if they had heard gunshots. (N.T. 11/21/2017 pg. 18) … After having provided his name, [Steele] was frisked then permitted to walk away from Officer Verdekal. (N.T. 11/21/2017 pg. 19) It was not until Officer Verdekal reviewed video surveillance of the shooting that [Steele] became a suspect. (Id. pg. 20-23) There is no evidence in the record which indicates that law enforcement drew their weapons on [Steele], physically restrained him or otherwise demonstrated lawful authority in a way which would objectively cause a reasonable person to believe that he or she

was not free to leave. Accordingly, law enforcement's interaction with [Steele] was a mere encounter which requires no level of suspicion.

PCRA Court Opinion, 5/13/22, at 8-9.

The record reflects that Officer Verdekal testified he was one of several officers who responded to multiple 911 calls concerning gun shots being fired at the Sherman Hills Apartment complex. *See* N.T., 11/21/17, at 16-17. During the initial search of the area, the officer encountered Steele outside as Steele exited the side door of one of the apartment buildings. *See id*. 17-18. Officer Verdekal explained, "[W]e were stopping pretty much anybody that we were able to come in contact with at that point." *Id*. at 18.

The officer testified that Steele was asked what he was doing in the area, whether he heard any gunshots, and his identity. *See id*. at 18-19. In addition, Steele was frisked for a weapon and permitted to leave. *See id*. at 19. Upon review, we agree with the PCRA court that the initial approach to Steele by the police was a mere encounter and that no seizure occurred at that time.[1] Therefore, Steele's claim that trial counsel should have sought

_____

[1] As the Commonwealth aptly observed, Steele has suggested that he "was detained without any specific suspicion and was surrounded by police when questioned, thus feeling that he could not leave. (03-0102021 N.T. p 6, 12) (11-21-2017 N.T. p. 19)." Appellant's Brief at 6 (citations in original). If this allegation was accurate, Steele's contact with police would have been beyond a mere encounter and required ascending levels of suspicion. "However, [Steele's] [citations to the record] do not indicate any testimony or other evidence in support of that conclusion." Commonwealth's Brief at 14. We have scoured the record for any reference to bolster the allegation that Steele was
*(Footnote Continued Next Page)*

suppression of his identification information lacks merit. Accordingly, because there is no merit to the underlying claim, the allegation of ineffective assistance fails.

Steele next argues that trial counsel was ineffective for failing to seek suppression of evidence of his historical location gained from his ankle bracelet GPS device. *See* Appellant's Brief at 6-7. Steele alleges that since he was wearing the bracelet pursuant to a private contract with a bail bond company, this evidence should be treated like GPS data derived from a mobile phone. *See id*. Accordingly, he argues the police should have obtained a search warrant prior to acquiring the GPS evidence from the third-party bail company. *See id*.

Here, we conclude Steele has failed to establish that he suffered prejudice from the admission of the GPS evidence. As the PCRA court accurately observes, Steele's claim "does not merit PCRA relief because the GPS dat[a] was cumulative evidence and was not dispositive [of] the issue of his guilt." PCRA Court Opinion, 5/13/22, at 12. The PCRA court explained:

> Multiple law enforcement officers saw [Steele] near the scene of the crime. Later, after viewing a video of the shooting, Officer Verdekal recognized the shooter in the video as [Steele]. Officer Verdekal recognized the clothing of the person in the video as being the same clothing that [Steele] was wearing during their meeting. [Steele] even identified himself in the video of the

surrounded by police officers during the encounter and have discovered no such support. As such, we have no basis to conclude that trial counsel would have been successful in arguing that the interaction between Steele and the police was not a mere encounter.

shooting though he did not admit to the shooting. Instead, he explained that he was running because someone else was shooting at him. See (N.T. 11/21/2017 pg. 65-66) In light of the overwhelming evidence of [Steele's] guilt, we do not hesitate to conclude that he would have been convicted of these same offenses even if the GPS evidence would have been suppressed.

*Id*.

Our review substantiates the PCRA court's conclusion that Steele did not suffer prejudice because of the admission of the GPS evidence. The police arriving at the scene in response to the 911 calls identified Steele from their initial encounter. *See* N.T., 11/21/17, at 17-19. Video footage taken from the complex's security cameras showed Steele walking around the scene and ultimately firing a weapon. *See id*. at 20-28. Officer Verdekal testified that Steele was wearing the same clothing in the video footage as he was wearing when he was found by police. *See id*. at 28. Importantly, Steele admitted he was the person seen on the video. *See id*. at 65-67. Hence, the GPS evidence placing Steele at the apartment complex was cumulative of the evidence noted above. Consequently, Steele has failed to establish that he suffered prejudice from the admission of the GPS evidence and is not entitled to relief on this claim that trial counsel provided ineffective assistance.

Steele last argues that trial counsel was ineffective for failing to object to the admission of the GPS evidence at the trial. *See* Appellant's Brief at 7-8. Steele contends that counsel should have objected based on hearsay and due to a lack of foundation. *See id*.

In addressing the previous issue, we discussed the cumulative nature of the GPS evidence and concluded that Steele failed to establish a reasonable probability of a different verdict if the GPS evidence had been suppressed. Similarly, we conclude that the admission of the GPS evidence at trial did not result in prejudice to Steele. We agree with the PCRA court's following observation regarding the potential prejudice caused by the admission of the GPS evidence: "[B]ecause the evidence of [Steele's] guilt was overwhelming, we also find that he has utterly failed to demonstrate that the court's verdict would have been different but for the GPS evidence. This evidence was cumulative and merely corroborated the trial evidence which pointed to [Steele's] guilt." PCRA Court Opinion, 5/13/22, at 15. Therefore, Steele has not established the prejudice prong of the ineffective assistance test, and his claim fails.

Since none of Steele's issues on appeal merit relief, we affirm the order denying his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/24/2023

- 10 -