J-A23013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCENT HOLLIMON | : | |
| | : | |
| Appellant | : | No. 2572 EDA 2017 |

Appeal from the PCRA Order July 13, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0010368-2008.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:             **FILED FEBRUARY 9, 2021**

Vincent Hollimon appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

The pertinent facts and procedural history are as follows:  On May 15, 2006, John Bohannon, was walking home from a neighborhood bar when he was confronted by Hollimon, who attempted to rob him.  When Mr. Bohannon did not immediately comply, Hollimon shot him in the arm.  After the two men struggled for the weapon, Mr. Bohannon turned to run back to the bar, and Hollimon shot him in the back.  Mr. Bohannon fell to the ground and, while standing over him, Hollimon again tried to shoot, but the gun jammed.  Hollimon then fled.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Police responded to the scene, and Mr. Bohannon was taken immediately to the hospital. Mr. Bohannon provided a description of his attacker and his clothing. Police Officer David Klayman spotted Hollimon, a person meeting that description, in a nearby corner store. After a confrontation, during which Hollimon pointed a gun at the police officer, the officer took Hollimon to the hospital. Once there, Mr. Bohannon identified Hollimon as the person who shot him. A police officer described Mr. Bohannon's reaction to observing Hollimon as "very adamant and very immediate." N.T., 5/14/10, at 50.

At trial Mr. Bohannon testified that, upon seeing Hollimon at the hospital, he knew that Hollimon had shot him because he "remember[ed] his face." *Id.* at 99. When the Commonwealth asked him how long it took before he was sure that Hollimon shot him, Mr. Bohannon responded: "Not long. I remembered. I remember when he shot me. I seen his face. I'm not going to forget his face. I will never forget his face." *Id.* at 100. On cross-examination, Mr. Bohannon testified that he was alert when he first arrived at the hospital, but that after he received medications he was going "in and out" of consciousness. *Id.* at 113-15. On redirect, Mr. Bohannon reaffirmed that he was alert when he identified Hollimon as the man who shot him. *Id.* at 127. When asked about how long of an opportunity he had to observe Hollimon's face, Mr. Bohannon reiterated: "I had a good enough look at his face, he looked at my face, I'm pretty sure he knows. He looked at me, I looked at him. He shot me. I know who shot me." *Id.* at 136.

The Commonwealth charged Hollimon with attempted murder, aggravated assault, multiple firearm violations, possession of an instrument of crime, and recklessly endangering another person. Hollimon testified at trial, claiming that he was not at the scene of the shooting, and only attempted to hand what he believed was a toy gun to Officer Klayman before their confrontation. *See* N.T., 5/18/10, at 65.

On May 19, 2010, a jury convicted Hollimon of all of the charges. On August 3, 2010, the trial court sentenced Hollimon to an aggregate sentence of 18 ½ to 47 years of imprisonment. The trial court denied Hollimon's motion for reconsideration of sentence. Hollimon filed a timely appeal to this Court, in which he raised several claims, including a challenge to the discretionary aspects of his sentence.

In an unpublished memorandum filed on May 31, 2012, we rejected all of Hollimon's claims and affirmed his judgment of sentence. ***Commonwealth v. Hollimon***, 50 A.3d 253 (Pa. Super. 2012). In addressing Hollimon's sentencing claim, this Court concluded that "Hollimon's bald assertion that his standard Guideline range sentence is excessive and unreasonable does not raise a substantial question." ***Hollimon***, unpublished memorandum at 5 (citation omitted). In addition, regarding his claim that the sentencing court failed to adequately consider his prior record score, we reiterated that "[t]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substation question for

review." ***Id.*** at 6 (citation omitted). Thus, this Court concluded that it was "precluded from addressing the merits of Hollimon's sentencing challenge." ***Id.*** On March 1, 2013, our Supreme Court denied Hollimon's petition for allowance of appeal. ***Commonwealth v. Hollimon***, 63 A.3d 1244 (Pa. 2013).

Hollimon filed a *pro se* PCRA petition on December 31, 2013, in which he raised several ineffective assistance of counsel claims. The PCRA court appointed counsel on May 20, 2014. After receiving several correspondences from Hollimon, PCRA counsel filed an amended PCRA petition on July 28, 2016. On December 2, 2016, Hollimon filed a counselled petition for post-conviction discovery. On January 3, 2017, the Commonwealth filed a motion to dismiss. On June 16, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Hollimon's petition without a hearing. ***See*** PCRA Court Opinion, 10/30/17, at 1 n.3.[1] Hollimon filed a timely response. By order of court entered July 13, 2017, the PCRA court denied Hollimon's amended PCRA petition. Although Hollimon filed a timely appeal, due to a series of counsel's illness or abandonment, litigation of the appeal was delayed. The PCRA court appointed current counsel on June 5, 2019. The PCRA court did not require Pa.R.A.P. 1925(b) compliance.

---

[1] The PCRA court's Rule 907 notice does not appear in the certified record. In addition, although the parties do not dispute that the PCRA court denied Hollimon's post-conviction discovery motion, an order to this effect is also absent from the certified record.

- 4 -

Hollimon now raises the following issues:

1. Whether the PCRA court erred in failing to grant an evidentiary hearing where trial counsel was ineffective for the statements he made regarding [Hollimon] during the sentencing hearing.

2. Whether the PCRA court erred in failing to grant an evidentiary hearing where trial counsel was ineffective for failure to provide an adequate sentencing hearing and to present favorable evidence on [Hollimon's] behalf during the sentencing hearing.

3. Whether the PCRA court erred in failing to grant an evidentiary hearing where appellate counsel was ineffective for failure to properly preserve and brief the excessiveness of the sentence in this case.

4. Whether the trial court erred in sentencing [Hollimon] to a term of incarceration with consecutive sentences where [it] failed to take into consideration mitigating circumstances and facts.

5. Whether the PCRA court erred in failing to order discovery, specifically the [victim's] medical records, where said evidence was relevant to the identification or mis-identification of [Hollimon] in violation of the United States and Pennsylvania Constitutions.

Hollimon's Brief at 4-5 (excess capitalization omitted).

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In his first three issues, Hollimon claims that the PCRA court erred in dismissing, without a hearing, his claim that trial counsel provided ineffective assistance at his sentencing hearing and that appellate counsel failed to preserve and brief his sentencing claim on appeal. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel

had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. ***Id.*** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

As noted above, Hollimon's first three issues involve claims of ineffective assistance of counsel. We first address Hollimon's first and second issues claiming that trial counsel provided ineffective assistance at sentencing.

To put Hollimon's claims in context, we cite in detail the following comments by trial counsel at sentencing. The trial court first informed the parties that it had reviewed the presentence investigation report ("PSI"), and was "aware that [Hollimon] had a childhood that included many foster homes and also some commitments into mental health facilities." N.T., 8/3/10, at 6. The court the stated that it was "very aware of the facts of this case" having presided at Hollimon's trial. ***Id.*** Trial counsel then stated:

> Your Honor, I'm not going to go any further, Your Honor has read the PSI about [Hollimon's] childhood in [foster] homes. To go a little further past that, [Hollimon] lost his father earlier this year. His father, as you can pretty much tell by going through the foster homes, was never around, but his father died while in custody in state prison where he was there for a very, very long time before he passed away. Also [Hollimon] has other relatives that are in state custody that are going to be serving very long sentences as well. That doesn't given any excuse for [Hollimon] to have done—

if he did commit the crimes and that was accused and found guilty of committing.

N.T., 8/3/10, at 6-7.

Counsel then asked the court not to hold the fact that Hollimon chose to go to trial against him or as an indication of a "lack of remorse and contrition" because Hollimon still maintained his innocence. *Id.*, at 7. Trial counsel continued:

> With the foster homes and the lack of family support I think that was buttress[ed] by the fact that we were here for, I don't know how many days, four days, five days I believe, and not a single family member came to court. The only person that came to court was Shakira Miles, who is present today, and that is [Hollimon's] girlfriend. I think that says something. They're not even here for sentencing, which kind of shows what type of support [Hollimon] has.

*Id.* at 8. At that time the court crier informed trial counsel that "[t]hey were here yesterday," to which counsel responded, "They were? Okay. Well I take that back." *Id.* Trial counsel then stated:

> Other than that, Your Honor, I just ask that you take the PSI and the mental health into consideration when you're fashioning your sentence. I think the mental health person may have missed the boat on the evaluation here because I think there's something else going on other than what the mental health evaluator said.
>
> I ask that whatever sentence you give [Hollimon that he] get reevaluated when he goes into state custody because that's were going to have to go. I ask that he get a GED and hopefully learn a trade while he is in there so when he does eventually get out, he can become a productive member of society. So [Hollimon] is asking me to ask for five to ten [years of incarceration].

*Id.* at 8-9. After the Commonwealth presented argument and testimony from Mr. Bohannon's sister, Joanna Bohannon, trial counsel called both Ms. Miles and Hollimon's mother to testify on Hollimon's behalf. N.T., 8/3/10, at 18-20. Finally, Hollimon exercised his right to allocution, in which he stated that, "Even though I didn't do it, I still pray for [Mr. Bohannon]. . . . One day I hope he [finds] the person who did it." *Id.* at 20-21.

In support of his first and second issues, Hollimon initially argues "trial counsel was ineffective in his failure to provide an adequate sentencing hearing in that he failed to circumvent [sic] negative statements made by the prosecution, [trial counsel] made negative statements regarding [Hollimon, and failed] to present favorable evidence on his behalf." Hollimon's Brief at 13. Moreover, Hollimon asserts "[t]here is clear evidence on the record that counsel failed to take additional action on sentencing day, such as requesting a continuance to procure additional family testimony or another mental health assessment, but there was no evidentiary hearing to determine why further action was not taken." *Id.* at 15. According to Hollimon, had an evidentiary hearing been held, the PCRA court "could have easily found that there was merit to the underlying claim [and] that counsel had no reasonable basis for his course of conduct[.]" *Id.* at 15-16. Finally, Hollimon contends that "[i]t is clear that additional investigation and testimony would have been helpful in assisting the crafting of an appropriate sentence and [Hollimon] was prejudiced by not having the benefit of the same." *Id.* at 16.

The PCRA court found that Hollimon was effectively represented by trial counsel at his sentencing proceeding. The court explained:

> On collateral review, we are sure [trial] counsel's strategy at sentencing was a reasonable attempt to argue mitigation in the face of Hollimon's unhelpful trial testimony. Counsel argued that Hollimon had been abandoned by his family who had not even showed up for him at sentencing (though this was not accurate). Counsel argued that this abandonment was the lens through which Hollimon's actions on [the day of the shooting] should be judged.
>
> Having read the PSI report, we did not find [trial] counsel's argument to be either new or persuasive. Nor was it prejudicial in light of a PSI report which reported in Hollimon's words that his family had "kicked him out."

PCRA Court Opinion, 12/27/19, at 4.

Our review of the record supports the PCRA court's conclusion that Hollimon failed to meet his burden. *Johnson*, *supra*. As noted above, trial counsel did call his mother and girlfriend to testify on his behalf, and counsel did make reference to a mental health evaluation. Hollimon has proffered no additional family members or mental health evaluations that would buttress his claim that additional investigation by counsel would have altered the trial court's conclusion. As such, Hollimon's claim of ineffective assistance of trial counsel at sentencing lacks merit, as it amounts to no more than speculation. Thus, the PCRA court did not err in dismissing Hollimon's first and second issue without first holding a hearing. *See Commonwealth v. Clark*, 961 A.2d 80, 94 (Pa. 2008) (explaining that, in the absence of a sufficient proffer,

a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a "fishing expedition" for possible exculpatory evidence).

In his third issue, Hollimon claims that the PCRA court erred in dismissing without a hearing, his claim that appellate counsel was ineffective for failure to properly preserve and brief the excessiveness of the sentence in this case.

In support of his claim, Hollimon initially asserts that "[t]here was no rational basis" for appellate counsel "to not raise the issue on appeal[.]" Hollimon's Brief at 17. Moreover, he cites our prior conclusion that his "bald assertion" of excessiveness did not raise a substantial question permitting review. *Id.* at 18 (citing *Hollimon*, *supra*)). According to Hollimon, "[h]ad appellate counsel properly preserved and briefed the discretionary aspects of [his] sentence, it would have been apparent that a substantial question existed and the Superior Court would have addressed the issue on its merits." *Id.* Finally, Hollimon contends that "[a]s a result of the ineffectiveness of appellate counsel, the Superior Court must now examine the discretionary aspects of [his] sentence." *Id.* at 18-19.

Our review of the record refutes Hollimon's claim. Initially, we note that counsel did properly preserve the sentencing claim in the trial court by filing a motion for reconsideration. In refusing to address Hollimon's sentencing issue, this Court did not find waiver for lack of preservation, but rather,

Hollimon's failure to raise a substantial question that his standard range sentence was inappropriate under the Sentencing Guidelines.

In his supporting argument as to this issue, Hollimon makes no attempt to demonstrate how the sentence imposed upon him by the trial court raised a substantial question; without citation to pertinent case law or the sentencing transcript he makes the "bare assertion" that a substantial question was "apparent." Hollimon cites no case authority to establish a substantial question. Thus, the PCRA court properly denied Hollimon's claim of appellate counsel's ineffectiveness without first holding an evidentiary hearing.

As phrased, Hollimon's fourth issue constitutes a direct challenge to the discretionary aspects of his sentence, which is not cognizable under the PCRA. *Commonwealth v. Fowler*, 930 A.2d 586, 593 (Pa. Super. 2007). Nevertheless, given the preceding issue, it is clear that Hollimon claims appellate counsel was ineffective in presenting his sentencing claim because this Court did not consider its merits.

In his Pa.R.A.P. 2119(f) statement supporting his challenge to the discretionary aspects of his sentence, Hollimon asserts that:

> The [trial court] failed to craft an appropriate sentence for [Hollimon] taking into account the rehabilitative needs of [Hollimon], his mental health needs, his educational and job skills, and the purpose and function of the sentencing guidelines. The sentence was purely punitive and excessive.

Hollimon's Brief at 20-21. Once again, Hollimon provides no case authority for his conclusion that the above challenge raises a substantial question.

- 12 -

Nevertheless, even were we to find one, our review of the record reveals Hollimon's sentencing claim is meritless.

Sentencing is a matter vested in the sound discretion of the sentencing court, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion, which in this context, is not shown merely be an error in judgment; rather the appellant must establish by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. **Commonwealth v. Shull**, 148 A.3d 820, 831 (Pa. Super. 2016)(citation omitted).

At Hollimon's sentencing, the court made the following comments after hearing Hollimon's allocution and before imposing sentence:

> **THE COURT:** Stand up, [Hollimon].
>
> I respect what you're saying that you are praying for Mr. Bohannon and you feel sorry for him. I also respect that you are maintaining your innocence in this matter, I respect that as well.
>
> However, I presided over a jury trial where I heard the facts of this case myself and the jury came back with a unanimous [guilty verdict] on all counts and the reality of the matter is what this case involved was—you may not be cold-hearted today, Mr. Hollimon, but you were very cold-hearted on that day.
>
> I think but for the grace of God two people would have died that day. Mr. Bohannon because apparently, according to the evidence, you cocked that gun at him when he was down and but for the grace of God that gun jammed.
>
> Then you were in the store and the police officer was there—that police officer was a lucky man, too.

- 13 -

So this is really an analysis of not your own background, and where your brothers are and the failure of our foster care system perhaps, this is now a matter of public safety for the most part in this case. That is very much in my mind here.

You have a prior record score of a zero, an offense gravity score of 14 with the deadly weapon enhancement the [standard] range is ninety months to the statutory limit. The statutory limit in an attempted murder case is forty years.

I believe, Mr. Hollimon, that you do pose a danger to our city, to society at large. Mr. Bohannon, unfortunately, felt the brunt of it and his family. My heart goes out to them. But nothing can be done about that at this point other than to prevent what happened to him from happening to someone else.

N.T., 8/3/10, at 21-23.

The trial court then imposed sentence, and continued:

So Mr. Hollimon, I am going to urge that you receive appropriate psychiatric treatment after your state incarceration but it's going to be a long time before you're eligible for parole. I do believe the public safety in this particular matter trumps everything.

I have considered the PSI. I know about your background but there are choices made, even some choices made today, telling me that you feel sorry for [the victim] rather than you are sorry for what you did, you made a choice even today.

*Id.* at 23.

In reflecting on its reasons for imposing is aggregate 18½ - 47 year sentence, the PCRA court explained:

Sentencing transcripts confirm our independent recollection that the facts of this case were egregious. Public safety was the reason for Hollimon's harsh sentence.

- 14 -

Even after balancing mitigating factors derived from an abused and neglected childhood, Hollimon's risk for future dangerousness was very high. He was 20 years old when he committed a brazen attempted murder and the statutory maximum was within [the] standard guideline range. (Attempted murder has a statutory maximum sentence of 40 years).

Hollimon's sentence followed a contemporaneous review of a [PSI,] a psychiatric report and [Hollimon's] own trial testimony. We remain convinced that the sentence was appropriate for public protection[.]

\*\*\*

As stated at the August 3, 2010 sentencing hearing, this court was aware of the extreme difficulties of [Hollimon's] upbringing. We were aware that he was abandoned by his parents, had lived in a succession of foster homes and had only one prior conviction, for drug possession only.

What concerned us was the risk Hollimon posed in the context of complete denial and false testimony at trial when compared to the overwhelming proof that he had shot [Mr.] Bohannon in the back—and then tried to execute him while he lay bleeding on a pavement. Hollimon had stood over [Mr.] Bohannon with a Tek-9 semi-automatic and pulled the trigger, but miraculously the gun jammed. [The victim's] life was spared though his is paralyzed for life.

PCRA Court Opinion, 12/27/19, at 1-2.

The PCRA court then discussed the police officer's confrontation with Hollimon in the corner store, and opined that Mr. Bohannon's identification of Hollimon at trial provided "overwhelming corroborating evidence." *Id.* at 3.

Addressing Hollimon's claims regarding his sentence in the present appeal, the PCRA court further explained:

On review now, as on August 3, 2010, we approach Hollimon's sentence as a balance between the nature of the crime itself, his prospect for rehabilitation, and his risk of

- 15 -

future dangerousness. Into this mix, Hollimon's trial testimony and sentencing allocution were not helpful to him. (At sentencing and without taking responsibility, Hollimon professed sorrow that [Mr.] Bohannon was paralyzed and [Hollimon] claimed that he was not a "cold-hearted" man). We were not persuaded. Given his young age and immaturity, his absolute lack of responsibility and the brazen nature of the crime itself, the public safety risk Hollimon posed—if he were prematurely released as a relatively young man—was too great to bear.

***

On the issue of [a consecutive of 3½ to 7 year sentence for the firearm violation, PCRA counsel's] excessive argument strikes a chord but is ultimately not persuasive either. A consecutive sentence is within a court's discretion. Hollimon is only 41 years old today after approximately eleven (11) [years of] incarceration. The balance we considered on August 3, 2010 remains valid and within appropriate court discretion. [Hollimon] will be almost fifty (50) years old when eligible for parole with many years ahead to resume life in a citizen's society.

While there is a parole maximum that could be considered disproportionate (47 years), this is the result of Pennsylvania's requirement that a minimum sentence must be at least one half of the maximum, so we leave the eventual date of release to the parole board. For reasons of public safety risk, however, we were not comfortable with a minimum sentence less than the one imposed. This court therefore declines to recommend a change.

PCRA Court Opinion, 12/27/19, at 4-5. Our review of the record supports the court's sentencing choice.

Initially, as noted by the PCRA court, "[l]ong standing precedent of this Court recognizes that 42 Pa.C.S.A. section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed."

*Commonwealth v. Marts*, 889 A.2d, 608, 612 (Pa. Super. 2005) (citations omitted). Moreover, we note that the sentencing guidelines concern minimum, rather than maximum, sentences. When, as here, the imposition of a statutory maximum sentence falls within the standard guideline range, a substantial question has not been raised. *See Commonwealth v. Yeomans*, 24 A.3d 1044, 1049 (Pa Super. 2011). Finally, this Court has held that "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive. *Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011). Under such circumstances, "we can assume the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" *Id.* (quoting *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

For all of the above reasons, Hollimon's challenge to the discretionary aspect of his sentence is meritless. Therefore, his fourth issue fails.

In his fifth and final issue, Hollimon claims that the PCRA court erred in denying his post-conviction motion for discovery of Mr. Bohannon's medical records.

Pursuant to Pa.R.Crim.P. 902(E)(1), in post-conviction proceedings, "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." This Court has noted that "[n]either the PCRA nor the Pennsylvania Rules of Criminal Procedure define the term "exceptional circumstances." *Commonwealth v.*

*Watley*, 153 A.3d 1034, 1048 (Pa. Super. 2016) (citing *Commonwealth v. Frey*, 41 A.3d 605, 611 (Pa. Super. 2012). However, we have held that "the trial court, in its discretion determines whether a case is exceptional and warrants discovery." *Id.* Thus, "[w]e will not disturb a court's determination regarding the existence of exceptional circumstances unless the court abused its discretion." *Id.*

Here, we discern no abuse of discretion. Hollimon's trial counsel possessed Mr. Bohannon's medical records pertinent to the shooting incident, and stipulated to their introduction as a trial exhibit. *See* N.T. 5/18/10, at 38-43. Hollimon's post-conviction request to review them personally does not establish an exceptional circumstance, especially considering trial counsel's cross-examination of Mr. Bohannon at trial. Trial counsel got Mr. Bohannon to admit he did not know what medication was administered to him in the hospital, and Mr. Bohannon conceded, on more than once occasion, that he was "going in and out" during his initial hospital stay. *See*, *e.g.*, 5/14/10, at 113-15+. Given the guilty verdicts, it is clear that, despite this testimony, the jury credited the victim's identification of Hollimon as the man who shot him. Thus, Hollimon's fifth issue fails.

In sum, because our review of the record establishes that each of Hollimon's claims is meritless, the PCRA court properly denied his PCRA petition without first holding a hearing. We therefore affirm the PCRA court's order denying Hollimon post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/09/2021</u>