J-S21011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LARRY RUSH | : | |
| | : | |
| Appellant | : | No. 2932 EDA 2019 |

Appeal from the PCRA Order Entered September 5, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0722721-1987

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:              **FILED SEPTEMBER 10, 2021**

Larry Rush appeals *pro se* from the denial of his Post-Conviction Relief

Act ("PCRA") petition.  After careful review, we affirm.

The PCRA court summarized the facts as follows:

> Complainants, Annamay Little and Denise Kellar were working at a flower shop on the corner of 21st and Locust Streets, in Philadelphia, PA on April 15, 1987 at approximately 5:30 p.m. when Appellant entered the store and asked to purchase a rose. While the complainants were assisting him, Appellant grabbed Annamay and threw her to the floor and produced a knife and held it to her face and then pushed both complainants into the store's bathroom.  Annamay eventually assisted Appellant in opening the cash register which he then emptied of its cash contents. Appellant ordered both wom[e]n to pool their valuables; however, both women managed to hide some of their possessions, including Annamay's wallet and Denise's credit cards and jewelry while Appellant was in the front of the store.
>
> Appellant returned to the bathroom and ordered the women to undress and threatened to kill them if they did not remove their

_____

[*] Retired Senior Judge assigned to the Superior Court.

underwear and they eventually complied. Appellant then held the knife to Annamay's throat and forced her to kiss him while he fondled her breasts and genitals. After she began to cry he stated that he would not rape her. Appellant than forced Denise to kiss him as well.

Appellant then used his shirt sleeve to wipe off the door handle and light switch telling the complainants that he was a "professional" and that the police would never catch him or do anything to him. Appellant eventually left the store after threatening to kill both women if they did not stay in the bathroom for twenty (20) minutes. After Appellant left, the victims called the police and gave descriptions of [Appellant] and also worked with a police sketch artist to create a composite drawing of the suspect. Thereafter, both victims separately viewed police photo arrays and picked Appellant out as the perpetrator. Denise however was not 'absolutely positive' as the perpetrator had worn a hat and she stated that she was not certain that the person she selected as the perpetrator had the long braided hair as the person in the array. Approximately two weeks later both victims separately positively identified Appellant as the perpetrator in six-person lineups that included the Appellant and others all wearing hats.

Just before the flower store robbery Appellant had entered a doctor's office across the street from the flower store. He entered and after being told the doctor was out he left only to return twenty minutes later again and asked to see a doctor for nitroglycerin for his heart condition. Both the doctor's son and secretary asked [Appellant] to leave the office. The doctor's son then called police to report what he believed to be suspicious behavior from [Appellant] and described Appellant to the police as wearing [a] white or beige knit cap.

Later that same day, Appellant was getting his hair styled at his home by a neighbor when he pulled out a large amount of money from his pocket saying that he "beats people for their money."

PCRA Court Opinion, 10/15/20, at 3-4 (citations omitted).

Appellant was arrested and charged with two counts of robbery, two counts of indecent assault, and possession of an instrument of crime ("PIC").

Prior to trial, trial counsel litigated a motion to suppress the identifications of Appellant by the two victims, the doctor's office secretary, and the doctor's son. After a hearing, the trial court denied the motion.

Following a jury trial, on December 9, 1987, Appellant was convicted of all charges. Post-verdict motions were timely filed, argued, and denied. The trial court sentenced Appellant to two consecutive terms of ten to twenty years of incarceration for the robbery convictions, two consecutive terms of one to two years of incarceration for the indecent assault convictions, and one consecutive term of two and one-half to five years of incarceration on the PIC conviction. In total, Appellant received an aggregate sentence of twenty-four and one-half to forty-nine years of incarceration.[1]

---

[1] The trial court explained its reasoning for the sentence imposed as follows:

> Finally, a note concerning the sentence imposed should be made. Very shortly following [Appellant's] release from a nine year incarceration on charges of [a]ggravated [a]ssault with a knife, [Appellant] not only committed this crime, but was also arrested on yet another charge of [a]ggravated [a]ssault with a knife. In that case for which he was subsequently convicted, he stabbed a sales woman in a book store eight times. Further, at the time of this sentencing he faced an open case for [m]urder in the [f]irst [d]egree for which he was later convicted. The [c]ourt notes that [v]ictim [i]mpact [s]tatements were filed in all cases wherein the [c]ourt was advised of severe after-affects suffered by the victims as a result of their experiences. The [Appellant] was sentenced accordingly.

Trial Court Opinion, 4/17/89, at 10.

A timely direct appeal followed, wherein Appellant alleged that the trial court erred by: (1) not making a full inquiry of three prospective jurors as to potential challenges for cause; (2) admitting the testimony of Georgette Sims, an acquaintance who testified that she saw Appellant hours after the robbery with a large amount of cash that he claimed to have collected by beating people; and (3) improperly instructing the jury that it could find unwanted touching constituted indecent assault if it found that Appellant inserted his tongue into his victims' mouths for the purpose of sexual desire. Appellant also argued that the evidence was insufficient to sustain a verdict of guilt as to indecent assault upon one of the victims. We affirmed the trial court's judgment of sentence and our Supreme Court denied Appellant's subsequent petition for allowance of appeal. ***Commonwealth v. Rush***, 571 A.2d 505 (Pa.Super. 1989) (unpublished memorandum), *appeal denied*, 586 A.2d 923 (Pa. 1990).

On January 14, 1997, Appellant filed a timely *pro se* PCRA petition.[2] However, due to a fifteen-year breakdown in the court system, no action took place on his petition until April of 2012 when Appellant's case was reassigned

---

[2] Appellant filed his petition after the 1995 amendments to the PCRA were enacted. The amendments gave defendants who had not previously filed a PCRA petition until January 16, 1997, to file one. ***See Commonwealth v. Tedford***, 781 A.2d 1167, 1171 (Pa. 2001). Since Appellant had not previously filed a PCRA petition his January 14, 1997 petition was timely filed.

to a new PCRA court. Following a *Grazier*[3] hearing, Appellant elected to represent himself. At Appellant's request, the PCRA court held his petition in abeyance while Appellant litigated a PCRA petition related to a different conviction. *See* N.T. Status Hearing, 1/31/14, at 5-7.

On August 15, 2017, Appellant filed an amended PCRA petition, asserting that trial counsel was ineffective for failing to meet with him before trial and that the Philadelphia Police Department and District Attorney's Office conspired to fabricate evidence against him. *See* Amended PCRA Petition, 8/15/17, at 20-23, 26-30. Over the next few years, Appellant litigated various motions, including requests for discovery and funds for defense services including an investigator and expert testimony. The Commonwealth responded with a motion to dismiss his PCRA petition, arguing that Appellant's claims were unsubstantiated and meritless.

Appellant filed a response to the Commonwealth's motion to dismiss in which he alleged that if "counsel had met with [him] prior to trial[,] [Appellant] would have disclosed a variety of important, credible information that would have led to [Appellant] ultimately being found innocent of the crime." *See* Response to Commonwealth, 3/1/19, at 6. Appellant did not disclose the nature of this "important" information. In his next claim, Appellant asserted that the government engaged in a conspiracy to convict him that involved

---

[3] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

procuring false identifications and planting evidence. *Id*. at 8-9. Again, Appellant offered nothing to substantiate his claim, but alleged that he would prove his allegations at an evidentiary hearing. *Id*.

After a status hearing regarding the issues raised by Appellant in his amended PCRA petition, the PCRA court determined that the issues were meritless and denied Appellant's petition. *See* Order, 9/5/19.[4] This appeal followed. Appellant failed to comply with the PCRA court's Pa.R.A.P. 1925 order. However, the PCRA court issued a Rule 1925(a) Opinion.

Appellant presents the following issues for our review:

I. Whether Appellant was denied a fair trial, effective assistance of counsel and due process of law under the Pennsylvania and Federal Constitutions when his attorney failed to meet with him prior to his trial?

II. Whether the prosecution committed intentional prosecutorial misconduct to the point of barring re-trial under *Berger*, *Russell Smith* and *Mortorano*?

III. Whether the PCRA court erred in summarily dismissing Appellant's PCRA petition, wherein the petition presented genuine issues of material facts, without an evidentiary hearing; thereby depriving Appellant of the opportunity to substantiate his substantial state and federal constitutional claims and violating his due process?

Appellant's brief at 5.

---

[4] Since Appellant agreed to waive his right to receive a Pa.R.Crim.P. 907 notice, the court issued an order to deny the petition without first providing Appellant with a Rule 907 notice. *See* Order 9/5/19.

Before we address the merits of Appellant's claims, we must determine whether this appeal is properly before us. As the PCRA court and the Commonwealth note, Appellant never filed a 1925(b) statement. The consequence of a late 1925(b) statement is usually waiver of all issues on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Burton*, 973 A.2d 428, 432-33 (Pa.Super. 2009) (noting that a complete failure to file a Rule 1925(b) statement results in waiver of all issues). However, waiver does not apply in the instant case because the PCRA court's October 16, 2019 order was not entered on the docket in compliance with Pa.R.Crim.P. 114(C)(2)(c) by indicating the fact and date of service on the parties. *See Commonwealth v. Chester*, 163 A.3d 470, 472 (Pa.Super. 2017) (holding order to file Rule 1925(b) statement was unenforceable where there was no indication on the docket of the date of service of the order requiring its filing). Thus, we decline to find Appellant's claims waived on this basis.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our

standard of review is *de novo* and our scope of review is plenary." ***Id***. "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (citing ***Commonwealth v. Miner***, 44 A.3d 684, 688 (Pa.Super. 2012)).

In his first claim, Appellant alleges that his trial counsel was ineffective for failing to meet with him. ***See*** Appellant's brief at 18-24. We are mindful that counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. ***See Commonwealth v. Becker***, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. ***Id***. The failure to establish any of the three prongs is fatal to the claim. ***Id***. at 113.

Regarding claims that counsel was ineffective for failing to consult with his client, we have explained that:

> Counsel is not deemed ineffective *per se* merely because of the short amount of time he has met with his client. The time actually spent by counsel with the accused discussing his case is not necessarily related to, and affords no basis for inferring, the extent of total trial preparation. Rather, to establish [ineffectiveness of counsel,] Appellant must establish that counsel inexcusably failed to raise issues which, had they been raised, would have afforded Appellant relief.

***Commonwealth v. Watley***, 153 A.3d 1034, 1046 (Pa.Super. 2016) (quotation and citations omitted).

Herein, Appellant alleges that counsel was ineffective for failing to meet with him in person from the time of his arrest until the start of his trial, which was approximately six months. *See* Appellant's brief at 19. While he has not attached any evidence to support his claim, Appellant previously argued that, if granted a hearing, he would submit documents from the Philadelphia Department of Corrections to substantiate that claim. *See* Amended PCRA petition, 8/15/17, at 21.

The PCRA court found that Appellant's claim was waived because he failed to substantiate his allegation that counsel did not meet with him. *See* PCRA Court Opinion, 10/15/20, at 5. Our own review confirms that the PCRA court's analysis is amply supported by the record and the law. In his brief, Appellant merely states that counsel failed to meet with him before trial, and therefore, he is entitled to relief. *See* Appellant's brief at 18-24. Contrary to established precedent which requires him to plead sufficient facts necessary to prove each prong of the ineffective assistance of counsel claim in his PCRA petition, Appellant offered no evidentiary support. *See* Pa.R.Crim.P. 902(A)(12) (explaining that a PCRA petition must contain "the facts supporting each [ground complained of] that do not appear in the record, and an identification of any affidavits, documents, and other evidence showing such facts").

Assuming, *arguendo*, that counsel did not meet with Appellant, the PCRA court alternatively denied relief because Appellant had not set forth any issues

that counsel failed to raise as a result of not meeting with Appellant. ***See*** PCRA Court Opinion, 10/15/20, at 6. Moreover, the PCRA court found that Appellant's substantive claim was also woefully underdeveloped. ***Id***. Since Appellant did not assert what issues counsel failed to raise or demonstrate how he was prejudiced by counsel's alleged failure to meet with him before trial, we find that the PCRA court did not err when it denied this claim. ***See also Commonwealth v Wharton***, 811 A.2d 978, 986 (Pa. 2002) ("Claims of ineffective assistance of counsel are not self-proving."). Thus, no relief is due on Appellant's first claim.

In his second issue, Appellant avers that the Commonwealth engaged in prosecutorial misconduct when it allegedly undertook "a conspiratorial plot to frame Appellant for yet another crime" in collusion with the Philadelphia Police Department. ***See*** Appellant's brief at 25. Specifically, Appellant argues that Homicide Detective James Morton manipulated the victims' identifications of Appellant by showing them Appellant's mug shot and instructing them to positively identify Appellant in the ensuing lineups. ***See*** Appellant's brief at 25-26. He alleges further that Detective Morton obtained a "fraudulent" search warrant for Appellant's residence, where he planted evidence of the crime. ***Id***. at 26. Appellant argues that this "egregious" behavior was undertaken with the aim of obtaining a conviction that the Commonwealth could use as an aggravating circumstance in Appellant's separate capital punishment case. ***Id***. at 30-31. The PCRA court held that this claim was

waived due to Appellant's failure to raise it on direct appeal. **See** PCRA Opinion, 10/15/20, at 7.

The PCRA statute expressly provides that issues are waived if the petitioner could have raised them at an earlier proceeding but failed to do so. **See** 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding."); **see also Commonwealth v. Santiago**, 855 A.2d 682 (Pa.Super. 2004) (affirming waiver of a claim of prosecutorial misconduct in a PCRA petition after the defendant failed to raise the claim on direct appeal). Since this issue was available to Appellant on direct appeal, and he failed to raise it, the PCRA court correctly determined that it was waived.

Furthermore, we agree with the PCRA court that even if Appellant had raised this issue in the context of a claim of ineffective assistance of direct appeal counsel, he would not be entitled to relief because the claim was meritless:

> [A]ppellant's allegations of misconduct levied against both the Philadelphia District Attorney's Office and the Philadelphia Police Department contain nothing other than bald allegations with no factual or other basis for his allegations of misconduct. Moreover, [A]ppellant argued a motion to suppress the victims' identifications of the [A]ppellant through photo arrays and police lineups during [pre-trial.] [At the ensuing hearing,] the police officers testified as [to] the conditions surrounding the lineups and use of photo arrays. During this hearing, the record reflects that the detectives who conducted the lineups and photo arrays testified credibly and without any bias or indication of any illegality.

> Therefore, as [A]ppellant's petition fails to set forth any specific allegations of misconduct or to provide any factual basis for his assertion of prosecutorial misconduct, and, his failure to raise the issue previously, his claim has no merit and must fail.

PCRA Court Opinion, 10/15/20, at 7-8. Since, Appellant has failed to plead and prove sufficient facts to substantiate his claim of prosecutorial misconduct, his second claim fails. *See* Pa.R.Crim.P. 902(a)(12).

Finally, Appellant argues that the PCRA court erred when it denied his request for an evidentiary hearing. *See* Appellant's brief at 32-33. Appellant asserts that he put forth material facts that entitled him to a hearing, but fails to identify any specific details that would warrant a hearing. *Id*. Instead, he baldly asserts that the PCRA court's failure to grant him a hearing was "incomprehensible in light of applicable decisional law" and that we should order the PCRA court to recuse on remand for a hearing in a new PCRA court. *Id*. at 33. We are unpersuaded by Appellant's boilerplate allegation.

It is well-settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa.Super. 2008). In order "to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that

the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011).

Appellant's inadequate argument has done nothing to refute the PCRA court's conclusion that a PCRA hearing was unnecessary. ***See Commonwealth v. Watkins***, 108 A.3d 692, 735 (Pa. 2014) (concluding that if an appellant makes no attempt to identify specifically the "legitimate material factual disputes" that he alleges warranted a hearing, as well as develop relevant argument, his "claim of PCRA court procedural error cannot succeed"); ***see also Jones***, ***supra*** at 290 (rejecting an appellant's assertion that his other claims warranted a hearing when he failed both to identify and argue with specificity what factual issues remained in contention). Instead, Appellant appears to be attempting to utilize the requested hearing as a vehicle to obtain evidence that may support his speculative claims of ineffectiveness or prosecutorial misconduct. This, he cannot do. ***See Commonwealth v. Sneed***, 45 A.3d 1096, 1107 (Pa. 2012) ("PCRA hearings are not discovery expeditions; rather, they are conducted when necessary to offer the petitioner an opportunity to prove that which he has already asserted, and only when his proffer establishes a colorable claim about which there remains a material issue of fact.").

Accordingly, we cannot conclude that the PCRA court's denial of an evidentiary hearing was an abuse of discretion. ***See Hanible***, ***supra*** at 452-53 ("Appellant has failed to satisfy [his] burden as his reliance on speculation

and failure to assert facts, which, if believed, would support his claim cannot be equated with a genuine issue concerning a material fact that warrants an evidentiary hearing.").

Based on the foregoing discussion, we discern no abuse of discretion or error of law in the PCRA court's denial of Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2021