J-S42024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JEFFERY GREEN | : | |
| Appellant | : | No. 2060 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 15, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0000253-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JEFFERY GREEN | : | |
| Appellant | : | No. 2061 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 15, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0006193-2016

BEFORE:  BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:          **FILED FEBRUARY 29, 2024**

In these consolidated appeals arising from two criminal cases, Appellant, Jeffery Green, appeals from his aggregate judgment of sentence of 2½-5 years' imprisonment for forgery, theft by unlawful taking, and related offenses.  We affirm.

In the first case ("Case I"), on March 29, 2016, Appellant accompanied his girlfriend, Erica Saunders, to a prenatal visit at the University of

Pennsylvania Hospital. The two met with Nurse Emily Green in her office. Nurse Green stepped out briefly during the visit while Appellant and Saunders remained. When Nurse Green returned, Appellant was still in the office and Saunders was in the hall.

As Nurse Green approached, she heard Saunders ask Appellant, "Did you find it?" The two explained to Nurse Green that they were looking for Appellant's cell phone. Shortly after they left, Nurse Green realized that her wallet was missing. She had used the wallet just prior to her appointment with Saunders and Appellant. Nurse Green then received an alert from her bank indicating that her credit card had been used at a Sunoco gas station. She cancelled three of her credit and debit cards. She then received a fraud alert later in the evening from the Royal Bank of Canada indicating that her credit card was used at a Family Dollar store in Philadelphia on March 29, 2016, from 2:58 p.m. to 5:57 p.m. N.T., 1/23/17, at 7–15, 33–38.

Nurse Green later identified Appellant in the video surveillance recovered from the Family Dollar store. The video showed Saunders buying cigarettes with a credit card the same day Nurse Green's wallet went missing and within the three-hour window in the fraud alert. Footage recovered from the outside of the same store showed Appellant on a bicycle shortly after Saunders purchased cigarettes. Appellant then entered the store and stood behind an unknown woman as she checked out at the register. Appellant and the unknown woman left the store together and stood near Appellant's bike.

Appellant exchanged something with the woman and rode away on his bike. *Id.* at 7–15.

During a non-jury trial on January 23, 2017, the Commonwealth presented the testimony of Nurse Green and Detective Paul Sawicki. Detective Sawicki testified that he had contacted the Royal Bank of Canada and acquired a spreadsheet detailing the fraudulent transactions. *Id.* at 16, 33–34; Ex. C-1. The detective testified that the document was an attachment to an email he received from a fraud agent at the bank. The Commonwealth introduced the document into evidence. N.T. 1/23/17, at 34–35; Ex. C-1. Defense counsel objected, arguing that the document had not been properly authenticated. The court overruled the objection, explaining that Detective Sawicki "got it in an e-mail from the person he identified as the fraud investigator at Royal Bank of Canada." N.T., 1/23/17, 34–38, 45.

The defense presented the testimony of Appellant's girlfriend, Saunders, who testified that she found the wallet outside of the hospital, used it at the Sunoco gas station and Family Dollar store, purchased cigarettes for her aunt, and then threw the wallet away. *Id.* at 49-50. Saunders testified that Appellant was not involved in the crime. On cross-examination, Saunders admitted that she had initially told detectives that she did not know anything about the wallet. *Id.* at 47–48; Ex. C-5.

At the conclusion of trial, the court found Appellant guilty of forgery, conspiracy to commit forgery, theft by unlawful taking, receiving stolen property, and access device fraud.

In the second case ("Case II"), on November 15, 2016, Appellant entered into the nurse's station at Presbyterian Medical Center Emergency Room and took a wallet from Nurse Jamie Malloy's pocketbook. He was stopped in the hallway and money was found on his person. N.T., 1/13/22, at 11-12. On January 13, 2022, Appellant pled guilty to theft by unlawful taking, defiant trespass and receiving stolen property.

On March 15, 2022, the court sentenced Appellant in both cases. In Case I, the court sentenced Appellant to 2–4 years' imprisonment for forgery, a concurrent term of 2–4 years' imprisonment for conspiracy to commit forgery, and 2 years of reporting probation for access device fraud. He received no further penalty on the remaining offenses. In Case II, the court sentenced Appellant to 6–12 months' imprisonment for theft by unlawful taking, and to no further penalty for defiant trespass and receiving stolen property. The court ordered this sentence to run consecutively to the sentence imposed in Case I. Appellant filed timely post-sentence motions, which the court denied. Appellant appealed to this Court from both judgments of sentence and filed timely statements of matters complained of on appeal. The trial court subsequently filed a Pa.R.A.P. 1925(a) opinion.

Appellant raises four issues in this appeal:

1. Whether the evidence presented at trial established sufficient proof beyond a reasonable doubt as a matter of law for every element of the crimes for which Appellant was convicted?

2. Whether the trial court erred by allowing the introduction of inadmissible hearsay evidence?

- 4 -

3. Whether the sentencing court abused its discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of Appellant's record, his prospect for rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in 42 Pa.C.S. § 9721 of the Sentencing Code?

4. Whether the sentencing court abused its discretion by entering a manifestly excessive sentence to such a degree that the imposition of consecutive sentences establishes evidence of the court's bias or animus toward Appellant?

Appellant's Brief at 7.

In his first argument, Appellant contends that the evidence was insufficient to sustain his convictions in Case I for forgery, conspiracy, access device fraud, theft and receiving stolen property. We disagree.

We review challenges to the sufficiency of the evidence as follows:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023).

The evidence was sufficient to sustain Appellant's conviction for forgery. A person is guilty of forgery when he "makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act." 18 Pa.C.S.A. § 4101(a)(2). "Writing" includes using a credit card. 18 Pa.C.S.A. § 4101(b).

Viewed in the light most favorable to the Commonwealth, the evidence demonstrates that Appellant and his girlfriend Saunders met with Nurse Green during a prenatal visit. The nurse left her office, and when she returned, Saunders was standing outside of her office while Appellant remained inside. The nurse heard Saunders ask Appellant, "Did you find it?" After the two left, she immediately noticed that her wallet was missing. Saunders admitted using the nurse's credit card at the Family Dollar store, and Nurse Green did not authorize Saunders to use her card.

These facts establish the elements of forgery. *Commonwealth v. Sargent*, 823 A.2d 174, 176 (Pa. Super. 2003) (defendant's act of signing victim's name to credit card receipts constituted forgery). Because Appellant and Saunders conspired to steal Nurse Green's wallet, Appellant is liable for Saunders' unauthorized use of the credit card. *Commonwealth v. Geiger*, 944 A.2d 85, 91 (Pa. Super. 2008) (holding that each conspirator is criminally responsible for actions of his co-conspirator).

Next, the evidence was sufficient to sustain Appellant's conviction for conspiracy. The defendant is guilty of conspiracy when he enters into an

agreement to commit an unlawful act with another person with a shared intent and a conspirator commits an overt act in furtherance of the conspiracy. 18 Pa.C.S.A. § 903(a)(1); *Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018). This agreement may be formed instantaneously, and it need not have been formal or ever expressly communicated between the conspirators. *Chambers*, 188 A.3d at 411. Criminal conspiracy can be proven by circumstantial evidence, including "the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators." *Commonwealth v. Sanchez*, 82 A.3d 943 (Pa. 2013).

Here, the evidence shows that Appellant conspired with Saunders to steal Nurse Green's wallet and use her credit card. Appellant and Saunders were the only two people present in the nurse's office when her wallet went missing. Further, video surveillance from the Family Dollar store showed Saunders making a purchase with a credit card on the same day Nurse Green's wallet was stolen. Footage recovered from the outside of the store showed Appellant on a bicycle shortly after Saunders visited the store. He entered the store and stood behind an unidentified woman as she attempted to check out at the register. Appellant and the unidentified woman exited the store together and stood by his bike. He exchanged something with the woman and biked away. The fraud alert from Royal Bank of Canada showed that Nurse Green's card had been used at the Family Dollar store at the time Saunders made her purchase and when Appellant and the unidentified woman

were at the store. This evidence demonstrates that Appellant and Saunders conspired to steal Nurse Green's wallet and use her credit card.

The evidence also was sufficient to sustain Appellant's conviction for access device fraud. A person is guilty of this offense if he "uses an access device to obtain or in an attempt to obtain property or services with knowledge that . . . the access device was issued to another person who has not authorized its use." 18 Pa.C.S.A. § 4106(a)(1). A credit card is an access device. 18 Pa.C.S.A. § 4106(d).

The evidence establishes that Appellant and Saunders stole Nurse Green's wallet. Saunders admitted using a credit card taken from the wallet to purchase cigarettes. Because Saunders and Appellant conspired to steal the wallet and use the credit card, Appellant is culpable for Saunders' fraudulent purchase.

Next, the evidence was sufficient to sustain Appellant's convictions for theft by unlawful taking and receiving stolen property. Theft by unlawful taking requires proof of three elements: (1) unlawful taking or unlawful control over movable property; (2) movable property belongs to another; and (3) intent to deprive (permanently). *Commonwealth v. Goins*, 867 A.2d 526, 530 (Pa. Super. 2004) (citing 18 Pa.C.S.A. § 3921 and 18 Pa.C.S.A. § 3901). A person is guilty of receiving stolen property if he "intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen." 18 Pa.C.S.A. § 3925(a).

As discussed above, the evidence shows that Appellant stole Nurse Green's wallet and then conspired with Saunders to make an unauthorized purchase using one of Green's credit cards. This clearly constituted an unlawful taking of Nurse Green's property. ***See Commonwealth v. Robinson***, 33 A.3d 89, 95 (Pa. Super. 2011) (evidence was sufficient to sustain defendant's conviction for theft where victim's testimony established that defendant was the only person with access to her bedroom, and boxes in the bedroom were undisturbed when she awoke in the morning, but subsequently, the boxes were empty and strewn around the room immediately after defendant was in the room).

For these reasons, Appellant's challenge to the sufficiency of the evidence in Case I fails.

In his second argument, Appellant asserts that the spreadsheet from Royal Bank and Detective Sawicki's testimony about the spreadsheet was hearsay, and therefore the court abused its discretion by permitting the Commonwealth to submit this evidence. Appellant contends that this alleged error entitles him to a new trial in Case I on the counts of forgery and access device fraud.[1] The trial court reasoned in its Rule 1925(a) opinion that Appellant waived this issue by failing to raise it during trial. Pa.R.A.P. Opinion,

---

[1] Appellant does not contend that this issue entitles him to any relief from his convictions for conspiracy to commit forgery, theft or receiving stolen property.

1/4/23, at 11. The Commonwealth likewise asserts in its appellate brief that Appellant has waived the issue. *See* Commonwealth's Brief at 13. We agree that it is waived.

At the close of the Commonwealth's case, the Commonwealth moved to admit the spreadsheet. Defense counsel objected on the ground that "there has not been authentication" of the spreadsheet, because "we heard from the detective and he doesn't know how or when it was made. All he knows is he got it in an email." N.T. 1/23/17, at 45. The court overruled this objection and allowed the spreadsheet into evidence. *Id.*

Defense counsel never raised a *hearsay* objection during trial. The first time that counsel did so was in Appellant's Pa.R.A.P. 1925(b) statement of matters complained of on appeal. *See id.* at ¶ 2 ("The trial court erred by allowing the introduction of inadmissible hearsay testimony. The Commonwealth failed to establish all necessary grounds to satisfy the hearsay exception and allow the introduction of the hearsay testimony").

On appeal, Appellant continues to argue that the spreadsheet is hearsay. Appellant's Brief at 15-16 (argument entitled, "The trial court erred by allowing the introduction of inadmissible hearsay evidence"). Although he asserts that the spreadsheet was not authenticated, he raises this point in

support of his claim of hearsay, not in support of a separate claim of lack of authentication.[2]

This Court has held:

It is well-established that [a] party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. **If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal.** [O]ne must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter. It is well-settled that issues raised for the first time in a Rule 1925(b) statement are waived.

***Commonwealth v. Wilson***, 286 A.3d 1288, 1296 n.4 (Pa. Super. 2022) (citations omitted; emphasis in original).

An objection to lack of authentication is different from a hearsay objection. An objection to lack of authentication is an argument that the item in question is not what the proponent claims it is. Pa.R.E. 901(a) ("to satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). In contrast, a hearsay objection is an argument that the evidence in question "is a statement, other than one made by the

---

[2] ***See*** Appellant's Brief at 16 ("The email and spreadsheet did not have any type of certificate of authenticity from Royal Bank. Without authentication by a representative from Royal Bank or a certification indicating that the spreadsheet was a record kept in the ordinary course of business by Royal Bank, the spreadsheet does not qualify as a business record exception and is inadmissible hearsay").

declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ***Commonwealth v. Watley***, 153 A.3d 1034, 1040 (Pa. Super. 2016) (citing Pa.R.E. 801(c)). Hearsay is not admissible except as provided by the Pennsylvania Rules of Evidence. Pa.R.E. 802.

In this case, the only objection that Appellant raised during trial was lack of authentication, but he purports to raise a different objection to hearsay in his Rule 1925(b) statement and in his appellate brief. By limiting his objection during trial to lack of authentication, Appellant waived the hearsay argument asserted for the first time in this appeal. ***Wilson***, 286 A.3d at 1296 n.4.

In his final arguments, Appellant contends that (1) his sentence is manifestly excessive based upon the gravity of the violation, the extent of his record, his prospect of rehabilitation, or an assessment of the mitigating and aggravating factors as noted in Section 9721 of the Sentencing Code, and (2) his sentence is manifestly excessive because his consecutive sentences demonstrate the trial court's animus towards him.

It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, appellate challenges to the discretionary aspects of a sentence should be treated as a petition for allowance of appeal.

***Commonwealth v. W.H.M.****, 932 A.2d 155, 162 (Pa. Super. 2007)*.  As we

stated in ***Commonwealth v. Moury****, 992 A.2d 162 (Pa. Super. 2010)*:

> An appellant challenging the discretionary aspects of his sentence
> must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [W]e conduct a four-part analysis to determine: (1) whether
> appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902
> and 903; (2) whether the issue was properly preserved at
> sentencing or in a motion to reconsider and modify sentence, ***see***
> Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal
> defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial
> question that the sentence appealed from is not appropriate under
> the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id.*** at 170.  Whether a particular issue constitutes a substantial question about

the propriety of sentence is a question to be evaluated on a case-by-case

basis.  ***See Commonwealth v. Kenner****, 784 A.2d 808, 811 (Pa. Super.

2001)*.

Neither of Appellant's sentencing arguments satisfy the ***Moury*** test.

With regard to the first argument—the court's alleged failure to consider

mitigating factors, the gravity of his offenses, and his prospects of

rehabilitation—Appellant filed a timely appeal to this Court, preserved the

issue on appeal through his post-sentence motions, and included a Pa.R.A.P.

2119(f) statement in his brief.  We conclude, however, that this argument

does not present a substantial question.  ***Moury***, 992 A.2d at 175 ("[t]hat the

court refused to weigh the proposed mitigating factors as Appellant wished,

absent more, does not raise a substantial question").  Appellant's second

argument, a challenge to the imposition of consecutive sentences, presents a

substantial question when, as here, it is raised in conjunction with an assertion

that the court failed to consider mitigating factors. *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Nevertheless, Appellant failed to satisfy other *Moury* requisites by failing to raise this objection during sentencing or in post-sentence motions.

Even if Appellant satisfied the *Moury* test, he would not be entitled to relief. The record shows that the court properly weighed all mitigating factors, and that it did not impose consecutive sentences due to animus against Appellant. The court heard argument by defense counsel for a mitigated sentence, N.T. 3/15/22, 16–23, and Appellant's testimony. *Id.* at 26–32. The court considered Appellant's background and rehabilitative needs, including his need for drug treatment, mental health counseling, and housing programs, and ordered referrals to drug treatment program, job training at SCI-Chester, a mental health evaluation and supervision, a halfway house, and housing programs. *Id.* at 26-32, 37–38.

The court also had the benefit of Appellant's presentence report and referred to the report when rendering its decision. *Id.* at 5, 33. When the trial court reviews a presentence report, we presume that the court weighed all appropriate sentencing factors. *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) ("where the sentencing judge had the benefit of a pre-sentence investigation report, it will be presumed that he or she was aware of the relevant information regarding Appellant's character and weighed those considerations along with mitigating statutory factors"). Despite taking

all mitigating factors into consideration, the court concluded that they were outweighed by aggravating factors. The court reasoned:

> Appellant's separate yet disturbingly similar offenses reasonably merit consecutive sentences. This Court adhered strictly to the Guidelines, sentencing Appellant to an aggregate of thirty (30) to sixty (60) months, reduced from a maximum Guideline sentence of eighty-one (81) months . . . Moreover, this Court had the benefit of a detailed PSI, which warned that Appellant was at a "very high risk for incurring future offenses and for violation." N.T., 3/15/2022 at 36. Indeed, this Court properly utilized all the information at its disposal and complied with all the requirements of 42 Pa.C.S.[A.] § 9721. This is evidenced on the record through this Court's consideration [of] "not just [Appellant's] needs, but the needs of the community as well." *Id.* Furthermore, the Appellant, who admitted to "need[ing] drug treatment," nevertheless expressed an "unwillingness" to participate in care or to "maintain any psychiatric treatment upon release from custody," further demonstrating the impetus behind his incarceration. N.T., 3/15/2022 at 33; [**Commonwealth v.**] **Cappellini**, 690 A.2d [1220,] 1225-26 [(Pa. Super. 1997)]. Therefore, this Court was justified in imposing the prescribed consecutive sentences.

Trial Ct. Op., 1/4/23, at 14. The court further declared that it held no animus against Appellant but instead imposed sentence only after it

> listened empathetically to [Appellant's] case, expressed "sympath[y] and sad[ness]" concerning Appellant's troubled background, and did not exhibit any objective bias or prejudice. N.T., 3/15/2022 at 34. However, considering the gravity of his offenses, his risk of reoffending, and his need for rehabilitation, his sentence was judicially appropriate.

*Id.* at 15.

Based on our review of the record, we conclude that Appellant's sentence was a proper exercise of the trial court's discretion.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/29/2024